# APPELLATE DIVISION

### OF THE

# SUPREME COURT

### OF THE

## State of New York.

---

In the Matter of the Transfer Tax upon the Estate of CHARLES
E. ORVIS, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; EDWIN W. ORVIS and Others, as Executors, etc.,
Respondents.

First Department, July 13, 1917.

**Tax — transfer tax — agreement by copartners that survivor shall
take title to funds accumulated to continue business — when
interest passing to survivor subject to tax — consideration —
mutual promises.**

Where two brothers doing business as copartners, for the purpose of pro-
viding for the continuation of the firm by the survivor in the event of
the death of either, agreed in writing that a certain sum should be drawn
from the profits of the firm and placed to the credit of a foundation
account to be owned equally by the brothers, said sum to go to the sur-
vivor as the sole owner on the death of either partner, and that the
heirs of the decedent should have no title thereto, and further agreed
that to provide against any impairment of the foundation account a
sum of money should be placed to the credit of a contingent account to
which the former terms of the agreement should apply in all respects,
it was intended that the title of either brother to the funds should pass
to the survivor only at death, and hence, on the death of one of the part-
ners, his share in the fund passing to the survivor is subject to a transfer
tax.

First Department, July, 1917.                    [Vol. 179.

Said transfer is subject to a tax, although the initial agreement was founded upon a sufficient consideration consisting in the mutual agreement of the parties.

Mutual promises may furnish a sufficient consideration for a promise to convey in the future, but if there be no other consideration the conveyance when it takes place is, in effect, a voluntary one.

SHEARN and PAGE, JJ., dissented, with opinion.

APPEAL by the Comptroller of the State of New York from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 5th day of February, 1917, affirming a prior order fixing the transfer tax herein.

*Alexander Otis,* for the appellant.

*Jabish Holmes,* for the respondents.

SCOTT, J.:

The sole question involved in this appeal is as to the taxability of two certain funds established by the deceased, Charles E. Orvis, and his brother and partner in business, Edwin W. Orvis. Charles E. Orvis died on March 8, 1915.

These two brothers had been members of the copartnership of Orvis Bros. & Co., and on January 2, 1911, made a mutual agreement in the following form:

" WHEREAS, it is the desire of Charles E. Orvis and Edwin W. Orvis, founders of the firm of Orvis Brothers & Co., to provide for the continuation of said firm, by the survivor, in event of the death of either of them:

" *Now therefore* it is hereby mutually agreed by and between said Charles E. Orvis and Edwin W. Orvis, that the sum of Five hundred thousand dollars shall be drawn from the profits and accumulations of said firm, heretofore accrued, and shall be placed to the credit of Foundation Account, and that such account shall be owned equally (half and half) by said Charles E. Orvis and Edwin W. Orvis, and it is hereby expressly and distinctly agreed by and between the parties hereto, that in the event of the decease of either of them, the survivor of them shall be the sole owner of the said Foundation Account, and the heirs of the one deceased shall have no right, title, interest or claim thereto. And it is hereby further agreed that to provide against any impairment

of said Foundation Account, an equal amount of Five hundred thousand dollars shall be placed to the credit of Contingent Account, and it is expressly and distinctly agreed by the parties hereto that the terms of this agreement, in relation to the said Contingent Account shall in every respect be exactly the same, as the terms in regard to the Foundation Account, as hereinbefore stated.

" In witness whereof we have signed, sealed and delivered this agreement on the second day of January, 1911."

The two funds provided for by this agreement were set up and were continued until the death of Charles E. Orvis, by which time the so-called foundation account had been impaired to the extent of $134,000, the contingent account remaining intact.

As will be seen from a reading of the agreement, one-half of each fund was owned by Charles E. Orvis until at his death it passed by virtue of the agreement to his brother Edwin. The question is whether or not a tax should be levied upon this transfer or devolution of ownership. The learned surrogate held that it should not, because the agreement under which the devolution or transfer was to take place rested on what he termed a valuable consideration, such consideration being found in the mutuality of the agreement whereby the brothers reciprocally agreed that the survivor of them should take the interest in the business belonging to him who died first.

That this does furnish a sufficient consideration to support the agreement as between themselves I do not question, but I do not consider that that fact alone establishes the non-taxability of the transfer. Mutual promises may furnish a sufficient consideration for a promise to convey in the future, but if there be no other consideration the conveyance when it takes place is, in effect, a voluntary one.

Section 220 of the Tax Law (Consol. Laws, chap. 60 [Laws of 1909, chap. 62], as amd. by Laws of 1911, chap. 732) imposes a tax upon a transfer by " grant,  *  *  *  sale or gift  *  *  *  intended to take effect in possession or enjoyment at or after such death," i. e., that of the grantor, vendor or donor.

This language seems to fit exactly the present case.   Whether

the transaction be considered a sale or a gift, it was clearly intended to take effect only on the death of the vendor or donor, and not then unless the vendee or donee should outlive the vendor or donor.

Each copartner retained the sole ownership of one-half of the moneys going to make up the two funds, just as he had before the funds were set up, for it is specifically provided that " such account shall be owned equally (half and half) by said Charles E. Orvis and Edwin W. Orvis."

The effect of the transaction is precisely as it would have been if each brother had made a will leaving to the other his interest in the accumulated and funded profits, providing such brother survived. In such a case no one would doubt that the transfer was taxable.

Under the terms of the agreement each brother retained the sole ownership of his share of the two funds and was entitled to the profits arising from the use thereof. The only limitation upon his ownership was that he could not freely dispose of the funds after death, if he happened to predecease his brother. All the elements were present that have led to the taxation of property conveyed by trust deeds under which the creator of the trust has retained the beneficial title of the property during life, and has disposed of the remainder after death. (*Matter of Green*, 153 N. Y. 223; *Matter of Brandreth*, 169 id. 437; *Matter of Cornell*, 170 id. 423; *Matter of Keeney*, 194 id. 281.) In fact the agreement was essentially testamentary in character, and is, therefore, subject to the Transfer Tax Law. (*Matter of Dana Co.*, 164 App. Div. 45; affd., 214 N. Y. 710.)

I am unable to distinguish the present case in principle from *Matter of Kidd* (188 N. Y. 274). In that case the testator had made a valid *ante mortem* agreement to leave his property by will to his wife's daughter. He attempted to leave it otherwise, but the agreement was upheld and the daughter's right to receive his property at his death was sustained, but it was held that the transfer was taxable. That case and this are clearly distinguishable from those in which the transfer at death is to be made in payment of an antecedent debt, as in *Matter of Baker* (83 App. Div. 530; affd., 178 N. Y. 575), or in those in which there had been

an actual completed sale during life by title passed, although possession was to be postponed until death of grantor or vendor. Nothing of the sort appears in the present case. Charles E. Orvis distinctly did not confer title upon his brother during his own life, for it is expressly agreed that he should continue to own half of the two funds, and whatever consideration there was for his promise that the brother should take the whole fund at death, was but a reciprocal promise *in future* by the brother and in no sense a present, valuable consideration which created a debt.

In my opinion the order should be reversed, with costs and disbursements to the appellant, and the matter remitted to the Surrogate's Court for entry of an order imposing the proper tax upon the transfer in question unless the parties can agree upon the figures, in which case a final order may be entered here.

DOWLING and SMITH, JJ., concurred; PAGE and SHEARN, JJ., dissented.

SHEARN, J. (dissenting):

The appeal of the State Comptroller is based upon the fact that the appraiser did not tax a certain contingent account and foundation account in the firm of Orvis Bros. & Co. which Edwin W. Orvis claims he was entitled to under an agreement made between him and his brother, Charles E. Orvis, the decedent, " that in the event of the decease of either of them, the survivor of them shall be the sole owner of the said Foundation Account, and the heirs of the one deceased shall have no right, title, interest or claim thereto." The same provisions were made in reference to the contingent account. The claim of the respondent is that this agreement, which was made more than four years before the death of the decedent, was made upon a valid consideration and that the provision for survivorship became an effective agreement at that time, and consequently the funds were not taxable.

The decedent and his brother had been partners since prior to 1903 sharing equally in the profits and losses of the business. From time to time various members were admitted who had shares in the profits of certain departments but the general profits and losses were shared equally between

the Orvis brothers. On January 2, 1911, the brothers made the agreement in question. It is called a copartnership agreement, but it is not and it has solely to do with providing for the creation of the foundation and contingent funds so as to provide for the continuation of the firm by the survivor in the event of the death of either of them without the necessity for any formal dissolution proceedings and without the necessity of the survivor going through an accounting and buying up the interest of the family of the deceased in the business. Further to carry out this idea, each brother had assigned his interest in the good will of the firm to the other. On June 1, 1914, the partnership agreement existing as to the firm of Orvis Bros. & Co. was renewed and extended for two years to expire on June 1, 1916, and Herbert R. Johnson was admitted as a member of the partnership, it being provided that the Orvis brothers should each have a capital interest of $250,000 and Warner D. Orvis $50,000, which was invested in the business previously. Johnson contributed $50,000 cash. This capital contributed by the Orvis brothers amounting to $500,000 is the original $500,000 constituting the foundation account which was created by the agreement of the brothers to withdraw that sum of money from the accrued profits of the firm and set it aside as a capital account, title to which should go to the survivor. On the death of Charles E. Orvis on March 8, 1915, the accounts of the firm showed that the contingent account of $500,000, created to keep the foundation or capital account intact, was intact, and that the foundation or capital account had been impaired and reduced to $386,684.22. The appraiser found that under the agreement of January 2, 1911, the estate of Charles E. Orvis had no interest in the contingent fund or in the foundation account.

It is admitted that the Transfer Tax Law does not impose a tax upon property passing under a contract made for a valuable consideration. But the Comptroller claims that there was no consideration for the agreement or rather that the consideration if any was bound to fail in any event because the brother dying first could get no value for his gift to the survivor. This is unsound. The two accounts were created with moneys which belonged equally to the two partners from the accumulations in the business and the

mutual agreement by which it was provided that the survivor should be entitled to the two funds was the consideration for the agreement of the other. Each was foregoing the advantage of an immediate sharing in $250,000 of accumulated profits for the benefit that would accrue from the use of his brother's profits as capital and from being enabled, in case he survived, to continue the business with this entire fund as capital and as his own property. It was of present value to each one, irrespective of survivorship, to have it definitely and certainly determined that this capital would continue to be available for the continuation of the firm's business, and, further, because during the life of both the brothers each obtained the benefit of the use of this foundation account as capital for the carrying on of the firm's business. It was a benefit to each one to have the use of the other's large share of profits as capital, which but for the contract would have been, or at least could have been, withdrawn and distributed as profits, and it was a detriment to the other to forego the immediate enjoyment of the profits. There was every element of a valuable consideration in this mutual agreement.

It does not seem to me to be correct to say that it was clearly intended that the transaction was to take effect only on the death of one of the parties. This gives no effect to the binding character of the agreement providing for the *present* use of the entire $500,000 fund as capital. Each partner did not retain the sole ownership of one-half of the moneys going to make up the two funds, in the sense of full ownership, for each had only a limited control over his half interest. Neither one could dispose of his interest by sale, or by mortgage or will, or incumber it in any way, because the entire disposition of the fund, so far as each one was concerned, had been irrevocably made in case of the death of either while the firm was in existence. On the execution of the agreement, Edwin W. Orvis' rights became absolute and indefeasible, and there was an absolute transfer to Edwin W. Orvis at that time, which could be defeated only by his death before his brother.

In *Matter of Kidd* (188 N. Y. 274) the transaction was an *ante mortem* agreement to leave property by will and the testator attempted to leave the property by will contrary to

the agreement. Here the " Foundation Account" was segregated from profits and each gave up his present right thereto, then and there vesting in the other an indefeasible interest, enjoyment of which could only be defeated by the death of the grantee prior to the grantor, during the life of the partnership.

The Comptroller claims that when the so-called new firm was formed in 1915 there was no renewal of this agreement and that it was in effect abrogated by their putting the foundation account into the new firm as capital. The evidence on this head is rather unsatisfactory but the forming of a new firm was little more than a rearrangement of the old firm and the admission of a new partner with $50,000 cash capital, and there is evidence that the previously existing partnership was extended and continued. It must be borne in mind that the partnership was substantially a two-men affair and that the agreement with respect to the foundation and contingency accounts was not a partnership agreement but an agreement between these two men for the creation of these two funds for a definite purpose. It was evidently their intention to have it continued during their lives and this agreement was in no manner affected by the technical forming of a new partnership and the admission of a new partner when we find the foundation account or capital of the previousy existing firm carried over and devoted to the use of the new firm.

The Comptroller claims that there was a clear intent to evade the Transfer Tax Law, but I can find no evidence of any such intent. Whether it was there or not, the transaction was entirely legal and there was no basis for a tax.

The order should be affirmed.

PAGE, J.:

I concur in this opinion, and also vote for affirmance on the grounds stated in my dissenting opinion in *Matter of Cory* (177 App. Div. 871, 877).

Order reversed, with ten dollars costs and disbursements, and proceeding remitted to Surrogate's Court for further action in accordance with opinion.