In the Matter of the Transfer Tax upon the Estate of CHARLES E. ORVIS, Deceased.

EDWIN W. ORVIS et al., Appellants; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

**Transfer tax — agreement establishing a fund from capital and profits of a firm and providing that upon the death of either partner his interest in that fund should pass to the survivor — such agreement a transfer of property effective at death of either partner and taxable under section 220 of the Tax Law.**

When an agreement between two partners established two funds within the capital and accumulated profits of the firm, and provided that upon the death of either member, during the existence of the firm, the survivor should be the owner of the interest of the deceased in the joint assets as comprised in those funds, it was an instrument of transfer intended to and which did take effect in ownership, possession and enjoyment at the death of the transferor. Such death was the event which effected the transfer and secured to the survivor the possession and enjoyment of the interest or property, and the share of the deceased partner in the assets of the firm dissolved by the death, received in ownership by the surviving member, is, under such mutual agreement that either surviving the other shall be the owner of the share of the other, taxable under section 220 of the Tax Law (Cons. Laws, ch. 60).

*Matter of Orvis*, 179 App. Div. 1, affirmed.

(Argued January 10, 1918; decided February 26, 1918.)

1

· APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 2, 1917, which reversed an order of the New York County Surrogate's Court· assessing a transfer tax upon the estate of Charles E. Orvis, deceased, and amended the appraiser's report by adding to the amount reported taxable the sum of $443,342.11.

The facts, so far as material, are stated in the opinion.

*Jabish Holmes* for appellants. The Transfer Tax Law does not impose a tax upon property passing under a contract made for a valuable consideration. (*Blair* v. *Herold*, 150 Fed. Rep. 199; 158 Fed. Rep. 804; *Matter of Birdsall*, 22 Misc. Rep. 180; 43 App. Div. 624; *Matter of Miller*, 77 App. Div. 481; *Matter of Spaulding*, 49 App. Div. 541; 163 N. Y. 607; *Estate of Reynolds*, 49 Cal. Dec. 383; 169 Cal. 600; *Matter of Vietor*, Christie on Inheritance Taxes, 714; *Matter of Borden*, N. Y. L. J. May 26, 1916; *Matter of Thorne*, 44 App. Div. 8; 162 N. Y. 238; *Matter of Edgerton*, 35 App. Div. 125; 158 N. Y. 671; *Matter of Hess*, 110 App. Div. 480; 187 N. Y. 554; *Matter of Demers*, 41 Misc. Rep. 473; *Matter of Stebbens*, 52 Misc. Rep. 443; *Matter of Polhemus*, 84 Misc. Rep. 335; *Matter of Heiser*, 85 Misc. Rep. 275; *Matter of de Escariaza*, 87 Misc. Rep. 517.) The agreement of January 2, 1911, was a valid contract for a ·valuable consideration. (*Hamer* v. *Sidway*, 124 N. Y. 538; *Rector* v. *Teed*, 120 N. Y. 583; *Emery* v. *Wilson*, 79 N. Y. 78.) The agreement of January 2, 1911, by its express terms, gave to Edwin W. Orvis and vested in him at the time of its execution the two funds, if he survived his brother, and even if voluntary (which is not the fact), the funds are not taxable. (*Hiles* v. *Fisher*, 144 N. Y. 306; *Blair* v. *Herold*, 158 Fed. Rep. 804; *Matter of McKelway*, 221 N. Y. 18; *Matter of Cory*, 177 App. Div. 871.)

*Alexander Otis, Schuyler C. Carlton* and *Lafayette B. Gleason* for respondent. The succession under the survivorship agreement was a taxable transfer within the language and intent of the statute. (*Matter of Gould,* 156 N. Y. 423; *Matter of Dana,* 164 App. Div. 45; 214 N. Y. 710; *Matter of Kidd,* 188 N. Y. 272; *Matter of Cory,* 177 App. Div. 871.) There was no completed transaction *inter vivos.* (*Matter of Baker,* 83 App. Div. 530; 178 N. Y. 575; *Matter of McKelway,* 221 N. Y. 15.) The agreement amounted to cross contingent remainders with life uses reserved. (*Matter of Keeney,* 194 N. Y. 281; *Matter of Brandreth,* 169 N. Y. 437; *Matter of Cornell,* 170 N. Y. 423; *Matter of Green,* 153 N. Y. 223; *Matter of Dana,* 164 App. Div. 45; 214 N. Y. 710.)

COLLIN, J. The Appellate Division added to the taxable estate of Charles E. Orvis, deceased, the sum of $443,342.11 under these facts: Charles E. Orvis and Edwin W. Orvis had on January 2, 1911, constituted the firm of Orvis Brothers & Co. for many years. Since December 31, 1903, the liability of each for the joint losses and the interest of each in the firm assets were equal with those of the other. The duration of the firm was without limit, subject to dissolution at any time by mutual consent. On January 2, 1911, they signed, sealed and delivered an agreement reading: " Whereas, it is the desire of Charles E. Orvis and Edwin W. Orvis, founders of the firm of Orvis Brothers & Co., to provide for the continuation of said firm, by the survivor, in event of the death of either of them: Now, therefore, it is hereby mutually agreed by and between said Charles E. Orvis and Edwin W. Orvis, that the sum of Five hundred thousand dollars shall be drawn from the profits and accumulations of said firm, heretofore accrued, and shall be placed to the credit of Foundation Account, and that such account shall be owned equally (half and half)

by said Charles E. Orvis and Edwin W. Orvis, and it is hereby expressly and distinctly agreed by and between the parties hereto, that in the event of the decease of either of them, the survivor of them shall be the sole owner of the said Foundation Account, and the heirs of the one deceased shall have no right, title, interest or claim thereto. And it is hereby further agreed that to provide against any impairment of said Foundation Account, an equal amount of Five hundred thousand dollars shall be placed to the credit of Contingent Account, and it is expressly and distinctly agreed by the parties hereto that the terms of this Agreement, in relation to the said Contingent Account shall in every respect be exactly the same, as the terms in regard to the Foundation Account, as hereinbefore stated." The two funds provided for by the agreement were created and the firm carried on its business with them as its capital. On June 1, 1914, the agreement creating the firm was renewed and extended for a period to expire on June 1, 1916, and the $500,000 foundation account was the capital contributed by Charles and Edwin under such renewal or extension agreement. In the contingent account was kept all the business of the firm down to June 1, 1914, and the account was used to liquidate the business of the firm to that date, as in that liquidation nobody was interested except Charles and Edwin. Charles died on March 8, 1915. Between December 31, 1903, and March 8, 1915, the membership of the firm was changed but the liability and interest of each of Charles and Edwin in the two funds remained unchanged. At the death of Charles, the contingent account was intact. The foundation or capital account had been reduced to $386,644.22. The one-half of the two accounts is the sum of $443,342.11. Edwin took this sum under the agreement of January 2, 1911. The Surrogate's Court decided that the agreement effected a transfer to Edwin

upon the death of Charles, non-taxable because made for a valuable consideration. The Appellate Division reversed the decision.

The statute authorizing the tax is section 220 of the Tax Law (Cons. Laws, ch. 60), which provides: " A tax shall be and is hereby imposed upon the transfer of any tangible property within the state and of intangible property, or of any interest therein or income therefrom, in trust. or otherwise, to persons or corporations in the following cases, subject to the exemptions and limitations hereinafter prescribed: 1. * * *. 2. * * *. 3. * * *. 4. When the transfer is of intangible property, or of tangible property within the state, made by. a resident, or of tangible property within the state made by a non-resident, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death. 5. * * *. 6. * * *. 7. * * *." Subdivisions 1, 2 and 3 relate to transfers by will or by the intestate laws. of this state. Subdivisions 5, 6 and 7 are irrelevant to the instant case.

The intention, nature and effect of the instrument of January 2, 1911, are neither complex nor obscure. It (a) established the two funds within the capital and accumulated profits of the firm, and (b) provided that upon the death of either member, during the existence of the firm, the survivor should be the owner of the interest of the deceased in the joint assets as comprised in those funds. It did not create the firm, nor did it fix, extend or affect the period of its existence. The relations of the members to each other as partners, their respective contributions to the capital of the firm, or their respective shares in the joint liabilities or profits during the period of the lives of both and the existence of the firm were not affected by it. During that period each member owned, possessed and enjoyed his interest

as a partner as he would had the agreement been non-existent. The appellants assert, and correctly, that the execution of the agreement was not a gift of the interest of either to the other. It did not attempt to interdict either member from withdrawing moneys from either fund or to compel the survivor to continue the business after the dissolution of the firm by the death of a member. As an instrument of transfer, it was intended to and did take effect in ownership, possession and enjoyment at the death of the transferor. Such death was the event which effected the transfer and secured to the survivor the possession and enjoyment of the interest or property. The record here presents the clear cut question, is the share of a deceased partner in the assets of a firm of two members dissolved by the death, received in ownership by the surviving member under a mutual agreement that either surviving the other shall be the owner of the share of the other, taxable under section 220 of the Tax Law.

The agreement rested upon a mutual and equal consideration and was enforcible. The language of the statute, literally adopted and applied, would, manifestly, subject the share to the tax. The only limitation expressed on the imposition of the tax upon the transfer " by deed, grant, bargain, sale or gift," is that it be not made " in contemplation of the death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death." (*Carter* v. *Craig*, 77 N. H. 200.) The nature of the tax (*Matter of White*, 208 N. Y. 64; *Keeney* v. *Comptroller of State of New York*, 222 U. S. 525) and the language of the statute considered in its entirety have convinced us that the legislature did not, however, intend that conclusion. Transfers resting upon a valuable and adequate consideration, although within the classification of the statute, are not within the intendment of it and are not taxable.

(*Matter of Baker*, 83 App. Div. 530; affirmed on opinion below, 178 N. Y. 575.)   In certain other jurisdictions it is so enacted.   (*Clarke* v. *Treasurer & Receiver General*, 115 N. E. Rep. 416; *State* v. *Mollier*, 96 Kans. 514.) The legislature did not intend that a purchaser who had paid full value for the property transferred should directly or indirectly pay the tax besides.   We have not decided, however, that subdivision 4 of the section which we have quoted is applicable only to voluntary transfers or gifts which are within its conditions.   (*Matter of Keeney*, 194 N. Y. 281, 286.)   Its language does not permit that conclusion.   It makes taxable a transfer by bargain or sale when made in contemplation of the death of the grantor or vendor or intended to take effect in possession or enjoyment at or after such death.   The provision discloses a distinction in the legislative mind between a transfer by gift and a transfer by bargain or sale.   It enacts, moreover, that transfers by bargain or sale should be taxable, or should not always and indiscriminately be non-taxable.   The meaning of that enactment must be ascertained from the context and the object sought to be accomplished by the statute.   The statute was not intended to restrict or burden the right of persons to transfer property in all legitimate ways and for all the usual and manifold purposes and objects of trade, commerce and purchase, or of voluntary transfers or gifts not made in contemplation of the death of the transferor or intended to take effect in possession or enjoyment after such death.   It was intended to tax all transfers which are accomplished by will, the intestate laws of this state, and those made or incepted prior to the death of the transferor in contemplation of or intended to take effect in possession or enjoyment after his death which are in their nature and character instruments or sources of bounty or benefaction and which can be classed as similar in nature and effect with transfers by

wills or the intestate laws, because they accomplish a transfer of property, donative in effect, under circumstances which impress on it the characteristics of a disposition made at the time of the transferor's death. In all cases in which the value of the consideration for the property transferred, under the statutory conditions, is so disproportionately less than the value of the property transferred that the transfer is, in the light of reason or of ordinary intelligence and judgment, beneficent and donative, the transfer is taxable. The taxability does not depend upon fraud or an attempt to evade the statute; nor does it depend upon the purpose or inducement of the transfer; nor does it depend upon the form given the transfer. The law searches out the reality and is not halted or controlled by the form. (*Matter of Gould*, 156 N. Y. 423.) The measure determining the liability or freedom from liability to the tax is the nature, the essence, the effect of the transfer. If, in truth, it, in effect, bestows, under the statutory conditions, a bounty or benefaction, and is not a transfer for money's worth, it is taxable.

The application of the statute in the instant case leaves no ground for discussion. The mind does not hesitate in determining that the transfer was in essence and in effect beneficent and donative, or in classing it as similar in nature and effect with transfers by wills.

The order should be affirmed, with costs.

HISCOCK, Ch. J., CUDDEBACK, HOGAN, CARDOZO, POUND and ANDREWS, JJ., concur.

Order affirmed.