## Appeal of **NIGEL LESLIE CAMPBELL.**    Docket No. 373.

> An interest in the good will of a partnership, acquired under the partnership agreement, by virtue of the death of the partner to whom, during his lifetime, under the terms of the partnership agreement the good will belonged, and disposed of by retirement from the partnership at an agreed price, represents an interest acquired by a transfer intended to, and taking effect at death and only the excess received on retirement over the value at the time received, if any, is taxable as income. In the instant appeal, no such excess appearing, the entire amount received by the taxpayer on retiring from the partnership was in its nature a return of capital and not taxable as income.

Submitted January 7, 1925; decided January 29, 1925.

*Lawrence Russell, Esq.,* and *Jesse I. Miller, Esq.,* for the taxpayer.

*John D. Foley, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal involves income tax for the year 1919, and an alleged profit on the sale or transfer of the taxpayer's interest in the partnership of William A. Read & Co., bankers and brokers of New York City.

### FINDING OF FACT.

Prior to March, 1916, the taxpayer was a member of the banking and brokerage firm of William A. Read & Co., of New York City. His interest in the current profits of the firm was 5 per cent of the total and his capital contribution then consisted of the sum of $20,000 cash theretofore contributed by him. The senior partner, William A. Read, was then and thereafter until his death the owner of a 50 per cent interest in the said firm.

On March 16, 1916, the partnership agreement was renewed, and the new agreement contained, among others, the following provision:

> Ninth. The good will of the firm, including the right to use the firm name, belong wholly and exclusively to Mr. Read and, upon the termination of the firm during his life by the expiration of its term or from any other cause, shall vest absolutely in him. If, however, he should die during said term, all his right, title, and interest in and to the said good will, including the right to use the firm name, shall vest in and become the property of the surviving partners without accountability therefor to the estate of Mr. Read. In no other case shall any partner or his estate be entitled to any interest in the good will.

This agreement became effective April 1, 1916. On April 7, 1916, Mr. Read died, and under the agreement the taxpayer and the other surviving partners became the owners, pro rata, of the good will. Being the holder of a 5 per cent interest in the firm, the taxpayer became the owner of a 10 per cent interest in the good will.

In September, 1916, a further agreement continuing the partnership of William A. Read & Co. with the survivors of the old partnership as members was consummated and provided, *inter alia,* as follows:

> Whereas in the said partnership articles it is provided that in case of the death of Mr. William A. Read during the term of the copartnership, a con-

tingency which has happened, the good will of the firm, including the right to use the firm name, shall vest in and become the property of the surviving partners without any accountability therefor to the estate of Mr. Read, and said partners are desirous of fixing a value for such good will and right to use said firm name and to further agree among themselves with respect to the future continuance of said business:

It is therefore agreed that the value of the good will of the firm and the right to use the firm name, solely for the purposes of this supplemental agreement, shall be taken as the sum of $600,000.

It is further agreed that for the purposes of this supplemental agreement the interest of each of the partners in the good will and right to use the firm name, valued as aforesaid, is the proportion which his percentage of the net profits fixed in the fourth article of the partnership agreement, dated March 16, 1916, bears to the total amount of net profits distributable under said article to all partners other than the estate of William A. Read.

Thereafter the taxpayer contributed various sums to the capital of the partnership, bringing his total cash contribution to the sum of $120,000, and the executors of the estate of William A. Read withdrew the cash capital which, on his death, he had held in the partnership.

In June, 1919, the taxpayer voluntarily retired from the partnership, receiving the cash capital of $120,000 theretofore contributed by him; 10 per cent of the current profits to the date of his retirement, and the sum of $60,000, representing the agreed value of the good will credited to him upon the books of the partnership.

On August 21, 1924, the Commissioner determined that a deficiency in income tax for 1919 in the sum of $17,543.98 was and is due from the taxpayer. The basis of the deficiency is an alleged profit of $30,000 from the above transaction. From the deficiency so determined, the taxpayer, by Lawrence Russell, his counsel and attorney in fact, brings his appeal.

### DECISION.

The deficiency in the sum of $17,543.98, heretofore determined by the Commissioner, is disallowed.

### OPINION.

JAMES: The taxpayer contends that when he withdrew from the partnership of William A. Read & Co., and was paid his proportion of the agreed value of the good will of that firm in 1919, he was the recipient of capital only, and not of income. The Commissioner has determined the deficiency apparently upon the theory that the taxpayer at all times owned a 5 per cent interest in the good will and by receiving a 10 per cent payment upon withdrawal, received a taxable profit of this extra 5 per cent, or $30,000.

The facts show, however, that the taxpayer acquired his interest in the good will owned by him at the time of his retirement by reason of the dissolution of the former partnership resulting from the death of William A. Read. The good will transferred in this manner was capital. It represented a capital asset, the transfer of which in contemplation of New York law, was one intended to take effect at death, and as such, taxable under the provisions of the New York State transfer tax (*In re Orvis Estate*, 223 N. Y. 1, 119 N. E. 88). At the time of the death of William A. Read the taxpayer

acquired a 10 per cent interest in the good will of the partnership. He disposed of a 10 per cent interest. The position of the Commissioner can not be sustained on this ground.

But if the interest disposed of exceeded *in value* the interest received, the difference may be a gain or profit. The Commissioner has denied that the good will acquired by the surviving partners in 1916 had a then value of $600,000. Certain profit and loss statements have been introduced in evidence to prove a value in 1916 of at least $600,000. But in our opinion the most persuasive evidence of the value of the good will in 1916 is contained in the agreement between the surviving partners, made in September, 1916, and quoted above. Here eight partners were determining among themselves the value of this good will as a basis of settling any future arrangements among them. The value they fixed would determine the sum any one of them would receive on retirement, or his estate upon his death. It would determine the sum which those remaining or surviving would pay. All were intimately connected with the business and all were under the most compelling motives to fix what was in the judgment of all them the correct value of the good will at that time, only five months after the date they had acquired it. They fixed $600,000 as that value.

Under these circumstances the withdrawal by the taxpayer of $60,000 in 1919, representing his proportion of the value of the good will acquired by him in 1916, did not give rise to income. The sum so received was capital when he received it and capital when it was withdrawn. The deficiency determined by the Commissioner is erroneous and must be disallowed.