**PHILLIPS, et al. v. GNICHTEL, Collector of Internal Revenue.**

Circuit Court of Appeals, Third Circuit. July 26, 1928.

No. 3753.

1. Internal revenue ⊚⟹8(11)—Transfer in contemplation of death is taxable, irrespective of form, if bestowing bounty or benefaction (Revenue Act 1924, §§ 301, 302(c); 26 USCA §§ 1092, 1093, 1094(c).

A transfer in contemplation of death is taxable under Revenue Act 1924, §§ 301, 302(c), 26 USCA §§ 1092, 1093, 1094(c), Comp. St. §§ 6336⅘a, 6336⅘b(c), if it, in effect, bestows a bounty or benefaction, and is not a transfer for money's worth, irrespective of its form; liability being determined by nature, essence, and effect of transaction.

2. Internal revenue ⊚⟹8(11)—Mutual promises must have money's worth to constitute consideration, saving property transferred in contemplation of death from taxation (Revenue Act 1924, §§ 301, 302(c); 26 USCA §§ 1092, 1093, 1094(c).

To constitute a consideration, saving property transferred in contemplation of death from taxation, under Revenue Act 1924, §§ 301, 302(c), 26 USCA §§ 1092, 1093, 1094(c), Comp. St. §§ 6336⅘a, 6336⅘b(c), mutual promises of transferor and transferee must be substantial, in that they, too, have money's worth, though sufficient to sustain agreements as between parties themselves.

3. Internal revenue ⊚⟹8(11)—Husband's transfer of stock in trust for wife in contemplation of death, in return for her transfer of fewer shares in trust for husband, held not exempt from taxation; "fair consideration" (Revenue Act 1924, §§ 301, 302(c), 26 USCA §§ 1092, 1093, 1094(c).

Husband's transfer of stock in corporation organized by himself and wife to himself and his successors in trust for wife, in contemplation of his death, in return for her transfer of smaller number of shares to herself and successors in trust for husband, held not a sale for a fair consideration in money or money's worth, within Revenue Act 1924, §§ 301, 302(c), 26 USCA §§ 1092, 1093, 1094(c), Comp. St. §§ 6336⅘a, 6336⅘b(c), exempting such transfers from taxation; "fair consideration" meaning reasonable in contractual sense, and free from suspicion of intent to evade inheritance tax, though not fraudulent.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Fair Consideration.]

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action by Edgar J. Phillips and another, as executors of the last will and testament of Henry P. Kraft, deceased, against Edward E. Gnichtel, as Collector of Internal Revenue for the Fifth District of New Jersey. Judgment for defendant, and plaintiffs bring error. Affirmed.

Phillips & Avery, of New York City, for plaintiff in error.

Earl A. Darr, of New York City, in pro. per.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., and James S. Turp, Asst. U. S. Atty., of Trenton, N. J. (Ottomar Hamele and C. M. Charest, both of Washington, D. C., of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Henry P. Kraft was about to die. His doctor had so advised him. He was a man of large means, and Katherine, his wife, also was very well off. They had children living.

When informed of impending death Henry Kraft deemed it imperative at once to put his affairs in order, particularly that part of them which consisted of stock in a corporation known as A. Schrader's Sons, Inc. His wife also owned some of its shares in her own right. Although their holdings were large they were not enough, either separately or jointly, to give a two-thirds' stock control of. the corporation, a matter which Henry Kraft regarded as highly desirable, but should they be joined and voted with shares held by others known as the "Cole interests" they were enough to effect the desired control. After submitting the whole situation to his attorney, this arrangement was proposed and formally entered into:

Henry Kraft owned 365 shares and Katherine Kraft, his wife, owned 350 shares of the capital stock of the Schrader corporation worth (always speaking in round numbers) $876,000 and $840,000, respectively. His holding in this corporation represented in value about two-thirds of his estate. Among his remaining assets he owned four lots of land at Long Beach, New York, worth $4,100. Henry and his wife caused to be organized a corporation under the name of Kraft's Corporation with capital stock of 100 shares of the par value of $100, or a total authorized capital of $10,000. Henry transferred his 365 shares of the Schrader corporation and conveyed the four lots to the Kraft's Corporation in return for 51 shares of its stock, and Katherine transferred her 350 shares of the Schrader corporation to the Kraft's Corporation in return for 49 of its shares; the relation of 51 and 49 being substantially the relation of their respective contributions to the capital of their personally created and privately owned corporation, thus raising the value of its capital from $10,000 to something over $1,720,000 and its shares' value from $100 to $17,200. At the same time husband and wife executed reciprocal trust agreements with reciprocal promises flowing from one to the other under which he transferred his 51 shares of Kraft's Corporation stock to himself and his successors to hold in trust and pay the income therefrom to his wife during her lifetime with remainders over to their children, and with certain dispositions in the event of specified contingencies not here important, and she, in turn, released her dower in the four lots and transferred her 49 shares of Kraft's Corporation stock to herself and her successors to hold in trust and pay the income therefrom to her husband during his lifetime with like remainders over to their children and like dispositions in the event of named contingencies. Henry Kraft died about two months later and his executors filed a tax return in which they omitted, as not subject to taxation, the value of the 51 shares of stock of the Kraft's Corporation which he had transferred in trust for his wife. They also, very properly, did not include in their return any property value of Henry Kraft in the trust made by Katherine Kraft for him because his interest in that trust had died with him. The Commissioner of Internal Revenue however, on a final audit of the return, made in accordance with section 302c of the Revenue Act of 1924 (26 USCA § 1094 (c); Comp. St. § 6336⅔b (c), regarded the decedent's transfer of stock in trust invalid for tax purposes as being not a sale for a fair consideration in money or money's worth, included the value thereof in his estate and accordingly found a deficiency in the federal estate tax of $69,462.84 and interest which, after payment under protest, the executors say was illegally assessed and collected and for the return of which, with interest, they brought this suit. At the trial to the District Court without a jury, the finding was for the defendant tax collector and to the judgment that followed, the plaintiffs sued out this writ of error.

The applicable sections of the Revenue Act of 1924 (sections 301 and 302c [26 USCA §§ 1092, 1093, 1094 (c); Comp. St. §6336⅔a (a, b), 6336⅔b (c)]), provide that in determining the value of the gross estate of a decedent as a factor in computing the tax prescribed by the act, there should be included the value at the time of his death of all property "to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in con-

templation of * * * his death, except in case of a bona fide sale for a fair consideration in money or money's worth."

The plaintiffs concede that the decedent created the trust and made the transfer here in question in full contemplation of his death but maintain, and thereby raise the single question in the case, that the transfer of his 51 shares of stock in the Kraft's Corporation to the trust for his wife in return for a similar trust created by his wife for him constituted "a bona fide sale for a fair consideration in money or money's worth" and therefore, falling within the exception of the statute, the value of this property is exempted from taxation.

In approaching this question we have purposely avoided the government's contention, or at least its intimation, that Henry Kraft sought by this arrangement with his wife to save his estate from payment of inheritance taxes. Conforming to the observation made by Mr. Justice Holmes in Bullen v. Wisconsin, 240 U. S. 625, 630, 631, 36 S. Ct. 473, 474 (60 L. Ed. 830), that "when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits," we have addressed our consideration to the sole question whether Henry Kraft's transfer of stock in trust for his wife made in consideration of a transfer of stock in a lesser amount by his wife in trust for him—all in contemplation of his death—constituted such a bona fide sale in money or money's worth as the statute permits when it excepts and thereby waives the tax.

We subscribe to the plaintiffs' ultimate construction of the statutory provision in question that the transfer in this case is saved from tax if it was made by "a bona fide sale" for the kind of consideration the statute names; but there is more in the statute than this. Clearly the statute does not exact a tax on the value of property which a decedent has for a proper consideration transferred not in contemplation of death or with respect to which he has not created a trust. On such a transaction the statute is silent. But when "in contemplation of death" a decedent has either transferred property or with respect to which he has created a trust, then the statute speaks and points out when in that case a tax shall or shall not be exacted. It follows that we cannot put out of the question the admitted fact that Henry Kraft's doings were in contemplation of death, for that fact has a direct bearing on the character of the transaction, namely,

whether it was a sale or in substance a testamentary disposition.

[1] The plaintiffs' say it was a sale in form and in substance as well, because Henry Kraft gave something of his own in return for something that belonged to his wife and that in consequence the consideration was "fair" in that, though not in money, it was in "money's worth" which was reflected in the advantage of the joinder of his stockholding in the Schrader corporation with that of his wife and its possible two-thirds corporate control, and in other enumerated benefits and detriments. We are not inclined to look for and weigh the consideration for the transfer by matching the advantages or contrasting the disadvantages of the transaction which enured to or were suffered by one party or the other; rather are we inclined to go to the heart of the transaction and find, if we can, just what the parties intended, just what they did and what was the precise result. Matter of Hall, 94 N. J. Eq. 398, 119 A. 669. Escape from taxation does not rest on the form of what has been done, for the law searches out the reality and is not halted or controlled by the form. Matter of Gould, 156 N. Y. 423, 51 N. E. 287. What determines liability to the tax is the nature, the essence, the effect of the transaction. If in truth it, in effect, bestowed a bounty or benefaction and is not a transfer for money's worth it is taxable. In Matter of Orvis, 223 N. Y. 1, 119 N. E. 88, 3 A. L. R. 1636. And in looking for the essential character of what was done we are not controlled nor are we aided by our decisions in Ferguson v. Dickson, 300 F. 961, and McCaughn v. Carver, 19 F. (2d) 126, or by the decisions in Bradley v. Nichols (D. C.) 13 F. (2d) 857, and Lincoln v. United States, 65 Court of Claims, ——, because these decisions were rested on essentially different facts.

[2, 3] Looking upon the facts in this case as they stand undisputed, we find first that Henry Kraft knew he was shortly going to die. With this knowledge, he made a death arrangement with his wife; evidently one that he had not before contemplated. But for his expected death it is hardly probable that he would have given up the absolute ownership of property worth $876,000 for a life income from property worth $840,000. Yet we can understand how he would do that very thing when he knew his life was rapidly drawing to its close. The bald fact was that he disposed of this property to those to whom he would naturally leave it on his death and he disposed of it in a manner which, though calling for a consideration,

left nothing in his estate representing the consideration or purchase price for the property. His estate was depleted by the exact value of the property transferred. Manifestly, this was not a transaction of sale between parties dealing at arm's length or dealing with a business regard for property values. Neither party, so far as we can learn, exacted from the other the best they could get from their respective transfers. It was without doubt a transaction suddenly forced by the circumstance that soon death of one of the parties would come. The precise arrangement thus made inter vivos could have been made just as easily by testaments. Indeed, the whole arrangement considered in respect to what inspired it and what was accomplished was clearly testamentary in character. The mutual transfers of stock were more of a deposit for a common purpose than of a sale, and, we think, lacked the quality of a "fair consideration." The consideration was "fair" in the sense of being "honest" for there is here no charge of fraud; it was not fair in that it was not "reasonable" in a contractual sense; and it was not "free from suspicion" (all within the definition of "fair consideration" given in Ferguson v. Dickson, supra) because there arises and persists the question whether Henry Kraft tried to do indirectly by means of a sale something he could not do directly without subjecting his estate to an inheritance tax, and whether, being under the necessity of finding a fair consideration to support a sale, he stretched the consideration too thin. If measured by money's worth, what Henry Kraft received was not worth in money what he gave. The satisfaction that he derived from tying up his shares with those of his wife and that he derived from having himself settled the major part of his estate before he died is impossible to appraise in money or money's worth. The only element of a consideration that remains is the mutual promises of the parties; yet these promises, while perhaps sufficient to sustain the agreements between themselves, must, to constitute a consideration validly saving the property from taxation, be substantial in that they too must have money's worth. Matter of Huggins, 96 N. J. Eq. 275, 125 A. 27; Matter of Orvis, 179 App. Div. 1, 166 N. Y. S. 126, Id., 223 N. Y. 1, 119 N. E. 88, 3 A. L. R. 1636; Safe Deposit & Trust Co. v. Tait (D. C.) 295 F. 429. Thus we are back to the first question of sale. Though a sale in form we are constrained to hold that the transaction with its cross-transfers of property was not a sale in substance but, like the transac-

27 F.(2d)—42½

tion in Safe Deposit & Trust Co. v. Tait, supra, was a family arrangement for the disposition of property of husband and wife for the benefit of their joint estates and for the protection of themselves in different expectancies of life and of their children after them. It savored far more of a testamentary disposition than of a bargain and sale such as the statute contemplates in relieving a decedent's estate from taxation.

The judgment below is affirmed.