**R. L. HEFLIN, Inc., v. UNITED STATES.**

No. L–134.

Court of Claims.
May 2, 1932.

William S. Hammers, of Washington, D. C. (John Neethe, of Galveston, Tex., and Edward T. Quigley, of Washington, D. C., on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (Ralph C. Williamson, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

PER CURIAM.

This case was before the Board of Tax Appeals (7 B. T. A. 1002). The findings of fact made by the Board have been stipulated as facts herein. We have gone over the opinion of the Board of Tax Appeals and think the same is correct, and the petition will have to be dismissed. It is so ordered.

The opinion of the Board of Tax Appeals was in full as follows:

Smith: The only question to be decided in this appeal is whether the amounts paid out by the petitioner to its principal stockholders under the agreements above described come within the deductions permitted by section 234 (a) (1) of the Revenue Acts of 1918 and 1921 (40 Stat. 1077, 42 Stat. 254). The section, which is identical in both acts, reads as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity. * * * "

There is no question raised as to the legality or the bona fides of the agreements entered into between the petitioner and its stockholders. Presumably the securities deposited with Hutchings, Sealy & Co. were, during the years involved, subject to the uses and purposes stated in the agreements.

We are of the opinion, however, that the payment of 50 per cent. of the net profits of the business for the use shown to have been made by the petitioner of the addition-

al credit provided by the pledging of the securities did not constitute an ordinary and necessary expense of carrying on the petitioner's business. We do not know, in the first place, to what extent the additional credit was really necessary or was actually used by the corporation. The evidence is to the effect that the credit needed to carry on the business to the best advantage was at times greatly in excess of the company's capital. There is not shown, however, any specific instance of the use of the credit provided by the pledging of the securities. As to the general method of conducting the business, G. H. Gymer deposed as follows:

"Q. Now, the money that you borrowed for the corporation, Mr. Gymer, was practically all on short loans, wasn't it, demand notes? A. Most of it, averaging.

"Q. Not over 10 days after payment? A. No, they were indefinitely.

"Q. Weren't they demand notes? A. They were demand notes, but at the same time we were never called upon to pay them, until we had shipped the goods, and were able to satisfy the notes.

"Q. The fact is, in that case, the bank was willing to hold those notes for you? A. Yes, sir.

"Q. And then accept payment from the goods that they held the notes against? A. Yes, sir, exactly. * * *

"Q. When you gave the notes with this memorandum to the bank, showing the cars it covered as security, did you furnish something to Hutchings, Sealy to indicate that they had a lien on that property? A. Oh, the receipt itself states so.

"Q. The trust receipt? A. The trust receipt, yes, sir, and the car numbers are cited on this trust receipt, together with the number of pounds contained, and the amount, the amount of the draft."

The total face value of the securities pledged, including the $20,000 of capital stock of the petitioner, was approximately $54,000. The petitioner paid to the stockholders approximately $20,000 for each of the years 1920 and 1921. This was not an ordinary expense.

The two stockholders to whom the money was paid owned all of the petitioner's stock in equal shares and received proportionate parts of the money. The result would have been precisely the same if the company had paid out the money by regular dividends. In the light of the evidence before us, the transaction was simply a distribution of the earnings of the corporation. Cf. Appeal of Universal Milking Machine Co., 4 B. T. A. 506.

Reviewed by the Board.

Judgment will be entered for the respondent.