## WEST v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5142.

Circuit Court of Appeals, Third Circuit.
Dec. 29, 1933.

James Craig Peacock, of Washington, D. C., and S. Lewis Davis, of Camden, N. J., for petitioner.

F. Edward Mitchell, of Washington, D. C., Pat Malloy, Asst. Atty. Gen., and Sewall Key and A. H. Conner, Sp. Assts. to Atty. Gen. (E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and J. A. Lyons and Laura M. Berrien, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for respondent.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

Commercial Realty Company, a New Jersey corporation, all of whose stock (though not paid for) was held in equal amounts by five persons, of whom the petitioner was one, desired to buy, and eventually acquired, a property in Camden, New Jersey, known as the Elks Building, which it proposed to sell under negotiations then pending. Against this property there was already a first mortgage for $150,000. To effect the purchase, the corporation placed upon it a second mortgage for $125,000, the money being loaned (at a discount) by one of the five stockholders, and a third mortgage for $14,000, and still the corporation did not have enough money to complete the transaction. Thereupon its five stockholders borrowed $31,000 from a bank, and after leaving $6,000 on deposit, as the bank required, each advanced $5,000 to the corporation and in return, pursuant to action by its board of directors, of which they were the sole members, each was given its note for $25,000, whether delivered before or after

they "had closed the whole thing out" is uncertain. Of this sum $5,000 represented the amount which each stockholder had actually loaned the corporation, $20,000 was in addition, and incidentally each received a salary of $5,000, making a total of $125,000 in notes, plus salaries. The item of $20,000 purports to have been given as a "bonus" or in consideration for an oral guaranty which four of the men made to the fifth for payment of the second mortgage and which all made for payment of the third mortgage. The corporation sold the property at a profit of $170,000. It paid each of the five notes for $25,000 and deducted the whole $125,000 in its 1925 income tax return as "Bonus on cash advanced", with the explanation: "Bonus on money loaned without security accrued. Not to be paid until mortgage is paid." As the purchase and sale of this property was the only transaction in which the company ever engaged and as it had no money left, it ceased doing business. Each of the stockholders in their income tax returns for 1926 reported receipt of the $25,000 payment. The Commissioner of Internal Revenue, in an audit of the corporation's return, disallowed the deduction of $125,000 from corporate income, treated it as a distribution of corporate profits to the stockholders, found a tax deficiency against the corporation and (it now being insolvent) seeks to collect the tax from the stockholders as transferees of the assets of the corporation. Revenue Act of 1926, c. 27, § 280, 44 Stat. 9, 61 (26 USCA § 1069). The stockholders appealed to the United States Board of Tax Appeals where, denying they were transferees of the corporation's assets, they raised and tried the issue whether the payments made to them by the corporation were in cancellation of bona fide indebtedness based on a valid consideration or were distributions of corporate profits. The Board sustained the Commissioner. Its order is here on the taxpayer's petition for review.

A patent uncertainty as to the precise question involved before the lower tribunals should be dispelled at the outset.

In determining a deficiency tax in the sum of $15,807.11, and in the Board's approval thereof, it is not clear whether the items of $5,000, moneys actually loaned, were included as profits distributed or excluded as money loaned and therefore deductible. The petitioner by his brief anxiously asserts the latter was or should be the case. We shall resolve this uncertainty in the way the Commissioner himself discussed the matter in his brief now before us and by his own statement of the precise question involved, namely:

"Whether or not there was any consideration paid the corporation for the $20,000 of corporate assets he thus received?"

On this petition for review of the order of the Board of Tax Appeals, the petitioner's first insistence is that the burden was upon the Commissioner to prove by evidence of his own that there was no consideration for the notes, Revenue Act of 1928, c. 852, § 602, 45 Stat. 791 (26 USCA § 1229), and that he did not sustain it. Whether or not the burden was upon him, the record shows that, evidently, he assumed it, for he produced evidence from the mouth of one of the five stockholders. As this evidence was not contradicted and in that respect was free from dispute as to primary facts, the Board was not required to make findings on issues of fact which, under Phillips v. Commissioner, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289, would be conclusive here if the evidence was legally sufficient to sustain them. The only question is whether, on the facts proved, the Board of Tax Appeals was right in drawing its inferences and arriving at its ultimate conclusion in respect to the tax liability involved.

We shall inquire whether there was evidence to sustain the Commissioner's finding, and the Board's approval, that the distribution was of profits.

The payment of $5,000 on each note was a return of money borrowed, and was clearly deductible. It was proved, and we think it is not questioned even now, that the $20,000 part of the notes was a bonus. There is a question whether the bonus was reckoned on the risk to be run in respect to the guaranties or on profits expected from a re-sale of the building. There is evidence to sustain the latter position. The five men were the sole stockholders of the corporation and wholly without regard to whether their status was that of stockholders or creditors, they stood to win or lose according to whether there was profit or loss in the sale of the corporation's property. The bonus was payable only after the mortgages had been paid, that is, the bonus was payable only in case of profit and only out of profit. Hence what purports, in each note, to be the consideration for the $20,000 bonus (given really by themselves to themselves) constituted not a consideration raising a debt but an arrangement to share losses and profits. If, as it happened, the sale yielded profits, the five stockholders were sure to receive them whether as bonus-holders or stockholders. Indeed, the award of a bonus gave the petitioner and his four associates nothing they did not have before, except a chance, by change of form, to escape taxation in the higher brackets. MacQueen Company v. Commissioner, 67 F. (2d) 857; Phillips v. Gnichtel (C. C. A.) 27 F. (2d) 662, 664. The result to the corporation and to the petitioner and his four associates would be the same in any event. Whether they held notes for $25,000, which included a $20,000 bonus, or held notes merely for the $5,000 actually loaned, they would inevitably receive the profits in the same amount in the shape of bonus or of dividends. Heflin v. United States (Ct. Cl.) 58 F. (2d) 482, 487; Id., 287 U. S. 631, 53 S. Ct. 83, 77 L. Ed. 547. The guaranty of payment of the second mortgage, which it is claimed constituted the main consideration moving to the corporation for the bonus (though made to its mortgage creditor) was in all practical effect made between the stockholders on their mutual engagements. The guaranty of payment of the third mortgage, given to an outsider, was a doubtful consideration for the notes, for here too the parties were dealing between themselves for their own benefit. The petitioner and his associates, that is, the five stockholders, were by their guaranties spreading the risk of the transaction among themselves so that if there should be a loss it would be shared between them. This is hardly a consideration to the corporation for, if consideration at all, it was, looking through form to substance, (MacQueen Company v. Commissioner, supra), a consideration moving between themselves with an eye ever upon the corporation's profits which, if earned, would be distributed among themselves in proportion to their equal note-holdings which corresponded precisely with their equal stockholdings. In any case payment of the bonus was on the facts a transfer or distribution of corporate profits which under the law are taxable against the transferees.

If the order of the Board of Tax Appeals for a deficiency tax of $15,807.11, with interest, now under review, is restricted to a disallowance of the deduction of the $20,000 item of bonus in each note, it is affirmed; if the order includes both the $20,000 item of bonus and the $5,000 loaned on each note, it is modified so that the amount of the deficiency tax shall be computed only on the deducted bonus items, with interest.