McLure Appeal.

Argued May 26, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Wm. Barclay Lex,* with him *Hepburn & Norris* and *A. B. Geary,* of *Geary & Rankin,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *R. Paul Lessy* and *James H. Duff,* Attorney General, for appellee.

OPINION BY MR. JUSTICE LINN, June 30, 1943:

Appellant, residuary beneficiary under her husband's will, complains of an order dismissing her appeal from the transfer inheritance tax appraisement of certain property.

The Act of June 20, 1919, P. L. 521, 72 PS section 2301, as amended, imposes a tax on the clear value of property transferred, inter alia, by will. The nature of the transfer tax was recently considered in *Tack's Estate,* 325 Pa. 545, 191 A. 155.

The property is 7,500 shares of the capital stock of E. J. Lavino & Company. The company was engaged in importing manganese and chrome ore, and in manufacturing refractories. The clear value of the property was matter of fact. Evidence of probative force in de-

termining the value was relevant and admissible: cf. *Clabby's Estate*, 308 Pa. 287, 162 A. 207; *Glen Alden Coal Co. v. Commissioners of Schuylkill Co.*, 345 Pa. 159, 167, 27 A. 2d 239. The Commonwealth's appraiser had valued it at $75.00 per share. The appellant contends that it should have been appraised at $57.045 a share, the price at which the executors were required, by contract made by decedent, to offer it to the corporation, and for which the corporation purchased it. The learned court, on the evidence produced, found the clear value at the death of the husband to be $76.06 per share which appellant concedes was the book value. As the trial was de novo, the court had power to reduce or to increase the appraisement: cf. *Commonwealth v. Pomeroy's, Inc.*, 344 Pa. 538, 26 A. 2d 197. The question now is whether that finding is supported: cf. *Chatfield v. Board of Revision of Taxes*, 346 Pa. 159, 163 29 A. 2d 685, 687. The Commonwealth put in evidence the official appraisement. Some facts were stipulated; parts of the petition and answer were read in evidence. The company's franchise tax report for the year in question, which appellant contends would not have supported a finding in excess of $59.00 per share, was also put in.

It appeared that decedent was an officer of E. J. Lavino & Company and that, June 6, 1928, the company, by whom he was then employed, gave him 2,500 shares; on October 22, 1929, the gift was increased to 7,500 shares upon condition, inter alia, that his entire holding should be subject to an agreement providing that he would not sell it or any part of it without the consent of the company; that if he died, or severed his connection with the company under conditions acceptable to the directors, his personal representatives in the one case, and he in the other, would offer the stock to the company at a price not to exceed 75% of the book value, determined as specified in the agreement, and that the company should have the option, for a period of six months, of purchasing all or part at the price stated.

If the company declined to purchase all or part, the owner might "sell the said stock . . . elsewhere." If he severed his connection with the company under conditions not acceptable to the directors, the stock should be offered to the company at a price not to exceed 50% of the book value, and that, if he were discharged, the price should not exceed 33⅓% of that value. The price at which the stock was sold, and at which appellant thinks it should be appraised, was $57.045 per share, which was 75% of the book value. There is evidence that the stock was unlisted, was closely held and that there were no sales in the market. The appellant called two witnesses who testified that they were investment securities dealers and gave their opinion of the value of the stock; one valued it at $25.11 per share, the other at $22.80. We may assume that these witnesses were convinced of the justice of their appraisements, but it must be conceded that if the learned judge was persuaded by the other evidence in the case to reject these opinions and to rely on the evidence of higher valuations, familiar rules require that his conclusions must be accepted.

Considering the whole record, the learned judge accepted, as we have said, the book value. In some circumstances courts accept the book value as most convincing: *Moore's Estate,* 104 N. J. Eq. 400, 145 A. 727, 728; *Renwick v. Martin,* 126 N. J. Eq. 564, 10 A. 2d 293, 315; *Plum v. Martin,* 132 N. J. Eq. 1, 26 A. 2d 529, 531; *Patton v. Wisconsin Tax Commission,* 227 Wis. 407, 278 N. W. 866, 868; *Frank v. Kay,* 123 Ore. 286, 261 Pac. 893.

Appellant contends that the court, in making its valuation, should have been controlled by the option agreement and refers, in support of the contention, to federal decisions[1] dealing with appraisements of prop-

---

[1] *Wilson v. Bowers,* 57 F. 2d 682 (C. C. A. 2d, 1932); *Lomb v. Sugden,* 82 F. 2d 166 (C. C. A. 2d, 1936); *Commissioner v. Bensel,* 100 F. 2d 639 (C. C. A. 3rd, 1938).

erty under the federal estate and gift tax laws. The law requires an appraisement on behalf of the Commonwealth.[2] No agreement by a property owner fixing the value can oust the jurisdiction of or control the Commonwealth's appraisers; such agreement does not create a limitation on the value binding the Commonwealth but it will be considered with the other evidence. One question, therefore, was what effect should be given to the option agreement. The federal decisions referred to are binding in the application of the federal estate law but do not prevent the authorities, required to apply the state law, from attributing to the option agreement less probative force in the valuation inquiry than is accorded such agreements by the federal courts in applying the federal law. To rebut the persuasive character of those decisions, the Commonwealth referred to decisions of several state courts declining to give controlling effect to such restrictive provisions. *Cory's Estate,* 177 App. Div. 871, affirmed 221 N. Y. 612, 117 N. E. 1065; *Orvis' Estate,* 179 App. Div. 1, affirmed 223 N. Y. 1, 119 N. E. 88; *Nieman's Estate,* 230 Wis. 23, 283 N. W. 452; *Commissioner v. Worcester Co. Trust Co.,* 305 Mass. 460, 26 N. E. 2d 305.

The argument that the finding of fact is not supported by evidence must therefore be rejected. The company's franchise tax report for 1940 showed "Actual Value of Assets, less Indebtedness" of $4,595,679.41 which shows a value in excess of the book value.

Appellant also contended that if the excess over the amount already paid[3] should be held to be payable it should be paid by the corporation which benefited by accepting the option. Although this point was not raised below, it is sufficient to say that the statute requires

---

[2] Section 10, Act of June 20, 1919, P. L. 521, Art. II, 72 PS section 2321.

[3] The difference between $76.06 per share and $57.045, the tax having been paid on the latter valuation.

the executor to deduct and pay the tax. Section 16, Act of June 20, 1919, P. L. 521, Art. III, 72 PS section 2352, as amended.

The appraisement is affirmed, costs to be paid by appellant.