## Mohn Estate

*Matten & Matten,* for appellant.
*Frederick J. Bertolet,* for Commonwealth.

MARX, P. J., November 10, 1950.—Earl S. Mohn, individually, and as executor of the will of William R. Mohn, deceased, appeals from the appraisement of the personal property of testator, for transfer tax due the Commonwealth.

Decedent died on February 3, 1950; his will and a codicil were probated on February 10, 1950, and letters testamentary were thereupon granted to Earl S. Mohn, appellant. Under the will and codicil appellant and Elizabeth Mohn Edmundson, brother and sister of testator, were named residuary legatees and devisees. An inventory and appraisement of the personal estate of testator was filed on April 26, 1950. It included an item of "4,800 shares of common stock of Mohn Brothers Company, a Pennsylvania corporation, Certs. Nos. 2, 3 and 4, of the par value of $10.00 per share, @ 8 . . . $38,400.00".

On July 18, 1950, the register of wills filed an appraisement in behalf of the Commonwealth, in which were included the 4,800 shares of stock, with a valuation of $72,000 ($15 a share). This appeal followed. A citation was awarded and the matter was heard on the petition on appeal and the aforesaid record.

In a similar case, McClure Appeal, 347 Pa. 481, the basis of the appraisement was 7,500 shares of the capital stock of E. J. Lavino & Company, a corporation engaged in importing mineral ores and in manufacturing. The stock was appraised, by the Commonwealth's appraiser, at $75 per share. Appellant contended that it should have been appraised at $57.045 a share, the price at which the executors were required by contract made by decedent to offer it to the corporation, and for which the corporation purchased it. The orphans' court, on the evidence produced, found the clear value to be $76.06 per share, the book value.

The Supreme Court, affirming the finding of the court below, said inter alia:

"The clear value of the property was matter of fact. Evidence of probative force in determining the value was relevant and admissible. . . . As the trial was de novo, the court had power to reduce or to increase the appraisement . . . The question now is whether that

finding is supported . . . The Commonwealth put in evidence the official appraisement . . . The company's franchise tax report for the year in question, which appellant contends would not have supported a finding in excess of $59.00 per share, was also put in."

Decedent, an officer of the corporation owned 10,000 shares of the common stock, subject to a limitation, inter alia, "that his entire holding should be subject to an agreement providing that he would not sell it or any part of it without the consent of the company; that if he died, or severed his connection with the company under conditions acceptable to the directors, his personal representatives in the one case, and he in the other, would offer the stock to the company at a price not to exceed 75 percent of the book value, determined as specified in the agreement, and that the company should have the option, for a period of six months, of purchasing all or part at the price stated. If the company declined to purchase all or part, the owner might 'sell the said stock . . . elsewhere.' If he severed his connection with the company under conditions not acceptable to the directors, the stock should be offered to the company at a price not to exceed 50 percent of the book value, and that, if he were discharged, the price should not exceed 33⅓ percent of that value. The price at which the stock was sold, and at which appellant thinks it should be appraised, was $57.045 per share, which was 75 percent of the book value. There is evidence that the stock was unlisted, was closely held and that there were no sales in the market. The appellant called two witnesses who testified that they were investment securities dealers and gave their opinion of the value of the stock; one valued it at $25.11 per share, the other at $22.80. We may assume that these witnesses were convinced of the justice of their appraise-

ments, but it must be conceded that if the learned judge was persuaded by the other evidence in the case to reject these opinions and to rely on the evidence of higher valuations, familiar rules require that his conclusions must be accepted."

The judge of the court below accepted the book value. Appellant contended that the court should have been controlled by the option agreement. The Supreme Court held:

"No agreement by a property owner fixing the value can oust the jurisdiction of or control the Commonwealth's appraisers; such agreement does not create a limitation on the value binding the Commonwealth but it will be considered with the other evidence."

Mohn Brothers Company had outstanding 340 shares four percent preferred stock, par value $100 and 28,-000 shares common stock, par value $10, a total of $314,000. The preferred shares were given priority in liquidation. They carried no voting right. Decedent owned 17 percent of the outstanding common stock. The remaining 83 percent of that stock was owned by 11 other persons, "interrelated", and was held subject to a limitation giving the corporation a prior right to purchase upon sale by a stockholder. The testimony showed no sales of stock. Stock brokers, basing their conclusions on the 1949 balance sheet of the corporation, estimated a fair value of a share of the common stock to be $6. An additional witness, after a study of the corporation reports and the market value for stock of that type, submitted a fair valuation of $8 per share. The aforesaid valuations included full recognition of the limitations under which the stock was held.

The balance sheet of the corporation for the year 1949 reported current assets of $433,020.62 against current liabilities of $122,240.96.

It reported fixed assets of $255,784.16, after deduction of a reserve for depreciation of $288,669.30. Additional assets of $49,726.52 brought the aggregate assets of the corporation to $738,531.30.

Against those assets stood the current liabilities of $122,240.96; 340 shares of preferred stock, $34,000, and 28,000 shares of common stock, $280,000, and an earned surplus of $302,290.34. We find that there stood to the use of the 28,000 shares of the common stock of the corporation total assets of $582,290.34, bringing a fair book value of the stock to $20.796 per share.

There was placed in evidence the capital stock tax report of the corporation for the year 1949. In that report the president and treasurer of the corporation certified to the fair valuation of $20.796 per share for the common stock. The senior taxing officer of the judicial bureau of the Department of Revenue of the Commonwealth, testified in relation to that report to a fair value of the stock in excess of $20 per share.

There was submitted in evidence the following record of the corporation: Earnings of the corporation for 1945, $58,560.30; for 1946, $71,413.73; loss for 1947, $66,981.09; net earnings for 1948, $17,813.76, and for 1949, $14,143.76.

Dividends were paid as follows: 1945, $20,160; 1946, $18,240; 1947, $1,360; 1948, $1,360; 1949, $18,160.

In the light of the acknowledged reports of the corporation, its record through the past four or five years, and in accordance with the principles followed in McClure Appeal, supra, we conclude that the appraised value, of the Register of Wills of Berks County, for the Commonwealth of Pennsylvania, for transfer taxes due the Commonwealth, established a proper, fair value of the shares of stock appraised. The appeal is accordingly dismissed, at the costs of appellant.