## Geary Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

The facts appear from the following excerpts from the opinion of:

LEFEVER, J., Hearing Judge.—John Richard Geary died March 17, 1948, leaving a will, dated December 10, 1947. On April 6, 1948, his will was duly probated and letters testamentary were granted to Henry L. Geary and Sanford D. Beecher. . . .

The third and knotty question remains for my determination, namely, does the settlement of various disputes and litigation between decedent and his former wife constitute "adequate and full consideration in money or money's worth" to qualify for inheritance tax deduction the amount which decedent promised to, and did, leave by will to their two sons? This is apparently a case of first instance in Pennsylvania.

Decedent was employed by the General Electric Company. His position and residence was in Japan from 1903 to 1938. He married Camille McCollum September 4, 1918. Thereafter, until November 1931, decedent and his wife lived together in Japan. During this time their two sons were born, viz., John Richard Geary, Jr., on July 12, 1919, and William Joseph Geary on May 25, 1921.

In November 1931 Mrs. Geary left decedent and returned to New York. In January 1932 she started proceedings for separation from decedent, for support, and for custody of their two sons. The New York

Supreme Court, by respective decrees, in 1933 (1) awarded Mrs. Geary separate maintenance and support; (2) awarded Mrs. Geary exclusive custody of the two boys, and (3) appointed a receiver of decedent's personal property in New York which consisted principally of a pension in the amount of $8,691.96 per year, which was paid to him as a retired employe, by General Electric Company. These decrees were eventually affirmed by the New York Court of Appeals, but restricted in scope to the pension and other personal property of decedent located in New York—it was held that the judgment was in rem since personal service had not been obtained upon decedent. During the same year decedent started proceedings in Japan, the matrimonial domicile, to obtain a divorce from Mrs. Geary and to obtain custody of the children. Both of these actions were resolved in decedent's favor by decrees entered December 1933. On August 23, 1933, Mrs. Geary filed a bill in equity against decedent and the Eastern Union Investment Company (all of which stock was owned by decedent) in the New Jersey Court of Chancery. This bill of complaint contended (1) that decedent owed Mrs. Geary a debt of $500,000 which he refused to pay; (2) that he had misappropriated a check for 25,000 Japanese yen worth $12,500; (3) that he had misappropriated and improperly transferred to Eastern Union Investment Company Mrs. Geary's property valued at $216,000; (4) that he was indebted to her in the sum of $21,452.13 on judgments and orders of the New York Supreme Court for support, alimony, counsel fees, court costs, and support of the two sons. On the basis of the bill, the New Jersey Chancery Court entered a temporary restraining order prohibiting decedent and the Eastern Union Investment Company from disposing of any securities, funds or other property in the latter's name. Later, because of diversity of citizenship, this suit was transferred to the Federal district court.

This litigation between the parties continued until March 15, 1937, when a settlement agreement was consummated. During the preceding three years of this litigation numerous unsuccessful efforts were made by both parties to settle the litigation.

The settlement agreement provided, inter alia: (1) That Mrs. Geary would discontinue all suits against decedent and the Eastern Union Investment Company and procure the vacation or cancellation of all judgments, orders and decrees in the State of New York directing the payment of money to herself or the two boys; (2) that mutual releases of all claims would be exchanged; (3) that each party would have equal custody rights over the two boys and the conflicting decrees of the courts of New York and Japan on this subject would be vacated; (4) that decedent would discontinue proceedings instituted by him in the Dominion of Canada for custody of the two sons; (5) that Mrs. Geary should receive decedent's General Electric Company pension for her life; (6) that decedent would establish a trust of $300,000 which would provide that Mrs. Geary would receive a guaranteed life income of $12,000 per year (toward which the General Electric pension would be credited) and each of the two sons would be paid $2,500 per annum until he attained 25 years of age, and $3,000 per annum thereafter, the remaining income to be paid to decedent for life and, following his death, to the two sons, and following Mrs. Geary's death all of her income to be paid equally to the two sons, each son to receive one half of his share of the principal at age 35, and the remaining one half at age 40; (7) decedent would pay $20,000 counsel fee to Mrs. Geary's counsel and, finally (8) decedent would agree to execute a will whereby he devised and bequeathed one fourth of his net estate to each of his two sons, the issue of a son who predeceased decedent to take the son's share.

Both parties meticulously carried out the full terms of the settlement agreement. Pursuant thereto, decedent, on December 10, 1947, executed a will containing the precise provisions in favor of the two sons specified in the settlement agreement. It is the inheritance tax effect of this provision of decedent's will which is before the court for determination.

The applicable statute (Act of May 27, 1943, P. L. 757, sec. 1, 72 PS §2302) provides, inter alia, that in appraising and assessing Pennsylvania inheritance tax ". . . the deductions herein allowed in the case of any indebtedness of the decedent shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth".

It is conceded by the Commonwealth that the disposition by decedent of one half of his estate to his two sons was contracted for by him bona fide. There remains, therefore, the narrow issue as to whether decedent's promise to devise and bequeath this one half of his estate was "for an adequate and full consideration in money or money's worth".

It is now settled in Pennsylvania that a devise or a bequest to a wife of an interest in decedent's estate arising from a separation agreement between the parties constitutes "an adequate and full consideration in money or money's worth" for decedent's agreement to make such devise or bequest and, therefore, the same constitutes a debt which is deductible for inheritance tax purposes and no tax is due thereon: Neller Estate, 356 Pa. 628 (1947) ; Mills Estate, 367 Pa. 504 (1951) ; see dissent in Stadtfeld Estate, 359 Pa. 147, 155 (1948).

The Commonwealth argues that in the instant case there was no adequate consideration for decedent's promise to devise and bequeath property to his two sons; that the burden is placed upon the estate, and

the duty upon this court, to dissect the settlement agreement to demonstrate that "adequate and full consideration" moved to Mr. Geary for this promise, and that if the estate fails to meet this burden the requisites of the statute are not met. It is argued further that the doctrine of Neller Estate, supra, and Mills Estate, supra, is bad public policy, and should be strictly limited to the facts in those cases.

There is no doubt that in the instant case the dispute between decedent and his former wife was acrimonious, vigorous, protracted and at arms length. It lasted for over six years. Mrs. Geary succeeded in tying up all of decedent's property in the United States. After three years of diligent negotiations, a settlement was effected. It was far reaching in its terms. One of the elements of that settlement was an agreement to benefit the sons of the contesting parties. Possibly this was the only subect upon which the two litigants could agree, viz., their common love for their children. However, there were various outstanding decrees on the subect of custody of these children and their support. Undoubtedly, it was a source of great satisfaction to Mrs. Geary to know that her children would be financially provided for by the terms of the deed of trust and the provisions of decedent's will, even though decedent later remarried, acquired some other liaison, had other children, or became interested in some charitable object to which he might leave his estate.

It is impossible to analyze the litigation and terms of the settlement agreement and pin point therein the exact consideration flowing to decedent for his promise to devise and bequeath one half of his estate to his two children. Such a metaphysical excursion is not required of this court. However, it is noteworthy that in the Federal gift tax litigation with regard to this settlement agreement, the court stated:

"We know of no basis in law for allocating the consideration for such a settlement to the various factors in dispute prior to the settlement. When the provisions for the boys were brought within the general terms of the settlement, they shared in and formed a part of the consideration for the settlement": Geary v. Commissioner, 2 T. C. M. 202, Tax Court docket 111758, 1943.

I find as a fact that decedent entered into the settlement agreement with his former wife "for an adequate and full consideration in money or money's worth". I also find as a fact that an integral part of that consideration, the exact value of which is impossible to determine, was the obligation of Mrs. Geary to relinquish her claims of ownership of property standing in the name of Mr. Geary which, in her equity suit, she claimed to have been misappropriated from her. Since the consideration involved in this relinquishment, together with the other consideration which passed from Mrs. Geary to Mr. Geary was adequate to support all of the promises of Mr. Geary contained in the settlement agreement, it follows that decedent's agreement to devise and bequeath one half of his estate to his two sons was supported as a matter of law by "an adequate and full consideration in money or money's worth".

The question of public policy was undoubtedly argued before the Supreme Court in Neller Estate, supra. That it was thoroughly considered by that court is evident from the vigorous dissent of Mr. Justice Jones (page 637) :

"The majority opinion seems unmistakably to chart as sure a course to effective tax avoidance as one could possibly imagine. Under the rationale of the decision, a wife's postnuptially agreed upon share of her husband's estate, payable after his death, can be relieved from liability for Pennsylvania's transfer in-

heritance tax if the wife's waiver of a marital right be made the consideration for her contractually specified property interest in her husband's post-mortem estate."

Without doubt, it should not be made easy for individuals to enter into agreements, a major objective of which is to defraud the Commonwealth of taxes or even to avoid payment of taxes properly payable to it. Likewise, it is recognized that in the fields of agreements between estranged spouses it will frequently occur that the one point upon which an agreement can be reached will be the welfare of the children. However, the Supreme Court of Pennsylvania has decided the law with regard to this. If this is to be changed legislative action is the only proper way to prevent the tax avoidance which may flow from the implications of Neller Estate, supra, and Mills Estate, supra. This is well set forth by Mr. Justice Stearne in Mills Estate, supra, page 508:

"Since the decision in *Neller Estate*, supra, it is no longer an open question in Pennsylvania that a *bona fide* separation agreement between a husband and wife providing for a payment at the husband's death, constitutes a *debt* and is consideration in money or money's worth.

"Furthermore, the *Neller* case was dated April 18, 1947, while the Legislature of 1947 was still in session. We said in *Salvation Army Case*, 349 Pa. 105, 110, 36 A. 2d 479: 'If our interpretation were not consonant with the legislative purpose, it was within the power of the legislature to amend the Act in order to effectuate that purpose.' It is most significant that two sessions of the Legislature have passed since the Neller decision, but no amendment to the Act as construed by this Court has been enacted: Chester School District's Audit, 301 Pa. 203, 214, 151 A. 801; Lower Nazareth

Township Supervisors' Appeal, 341 Pa. 171, 175, 19 A. 2d 92."

Finally, it is to be remembered that the statute requires as the first condition for the deduction to be allowed that the transaction be "contracted bona fide". It is conceded by the Commonwealth in this case that the transaction was bona fide. A case of tax evasion between estranged spouses would not be bona fide.

It is to be noted that third party beneficiary contracts are binding and enforcible in Pennsylvania: Commonwealth v. Great American Indemnity Co., 312 Pa. 183 (1933), and authorities there cited. Therefore, the obligation of decedent to his sons in this case was just as binding as though the contract were for the benefit of his wife.

Accordingly, I hold that the agreement of decedent in this case to devise and bequeath one half of his estate to his two sons was based upon "an adequate and full consideration in money or money's worth". It follows that the amounts so devised and bequeathed were properly allowable inheritance tax deductions. Consequently, I sustain the appeal from the register.

*Irving N. Kieff*, Deputy Attorney General for exceptants.

*Duane, Morris & Heckscher*, contra.

BOLGER, J., March 25, 1955.—The court is called upon to decide whether claimants, who are sons of testator, are entitled to deductions as legatees of half of testator's estate, the legacies having been made in accordance with a marital settlement between testator and his wife. To sustain their position, claimants presented to the hearing judge records of court proceedings, two of which were uncontested, and a third in which both sides filed pleadings wherein all issues were traversed, which proceeding was never decided, and also records of negotiations for settlement and

the agreement of settlement between testator and his wife, without any attempt to evaluate these several incidents in "money or money's worth" as consideration moving to testator at the time he executed his will. The learned hearing judge, stating that it was a metaphysical impossibility to evaluate these elements and apparently believing that claimants were under no obligation to supply him with further facts upon which to make findings and conclusions, has ruled that because the legacies to testator's sons were based upon the obligation to his wife under the agreement and, therefore, constitute ipso facto adequate and full consideration in money or money's worth, it follows that they are debts of the estate and not taxable. The questions are threefold: (1) Whether the taxpayers have demonstrated, as was their obligation (McLure's Appeal, 347 Pa. 481), that the legacies were in payment of a debt; (2) whether the record contains sufficient facts to substantiate the findings and conclusions of the hearing judge, and (3) whether the hearing judge has made adequate findings of fact in order to sustain his conclusions and decision.

Neller Estate, 356 Pa. 628 (1947), established the novel principle that a devise or bequest to a wife of an interest in decedent's estate arising from a separation agreement constitutes adequate and full consideration in money or money's worth and, therefore, such a devise or legacy is deductible as a debt. However, the majority opinion, no doubt in response to the vigorous dissent filed by three members of the Supreme Court, placed broad limitations upon the principle and upon its application. Chief Justice Maxey, who wrote the opinion, pointed out that certain marital obligations of a husband could be evaluated in money and that support, which was the consideration for the marital agreement, was one such. He then went on to demonstrate that the $10,000 derived

by the widow from testator's estate, pursuant to the agreement, was less than the amount which calculation showed testator owed the widow before he died. The dissenting opinion characterized the establishment of this policy as a departure not only from the existing law of Pennsylvania, but also from the Federal law (Internal Revenue Code, 26 U. S. C., §812(b), 53 Stat. at L. 123, pertaining to Federal estate tax, as well as from the Federal gift tax law (Merrill v. Fahs, 324 U. S. 308) and pointed out that such a policy would open the door to widespread tax avoidance. We also derive from this decision, in addition to the principle for which it has been stated, the following limitations: (1) The debts must be payable directly to the wife; (2) the absolute necessity of the taxpayer establishing some process of analysis and supplying full details to support the conclusion that the debts possessed value in money or the means existed for ascertaining such value: Stadtfeld Estate, 359 Pa. 147, involved the question of proration of the Federal estate tax which included the payment of legacies to a widow as debts under a marital agreement and merely confirmed the broad principle that such obligations were debts under Pennsylvania law, but not under the Federal law. In Mills Estate, 367 Pa. 504, the principle that legacies payable to a wife, pursuant to marital agreements, constitute debts and are, therefore, deductible for tax purposes was followed, but there the issue involved debts directly payable to the wife. The most presently significant aspect of Mills' Estate, supra, is that the Supreme Court remanded the case to the lower court because the record did not reveal sufficient facts from which the court could ascertain whether an adequate and full consideration in money or money's worth supported the marital agreement. On page 509 the court stated:

"However, a more searching inquiry should have been made in the Court below concerning the ages of the parties, the extent of their respective property, the prospects of financial advancement and the earning capacity of the husband and an analysis of that which the wife relinquished and what she was to receive."

In the concurring opinion (page 510) appears the following:

"In the instant case, the learned Court below failed to make any findings of fact whereof a conclusion as to the adequacy and fullness of the consideration could be competently predicated. I therefore concur in this Court's action in remanding the case so that relevant findings appropriate to the evidence may be made and the adequacy and fullness of the consideration adjudicated accordingly." .

Neller Estate, supra, extended the social responsibility of a husband to his wife to require, in a sense, a contribution by the Commonwealth to the fulfillment of this obligation in the amount of the tax otherwise assessable. In the instant case the learned hearing judge extends the tax relief beyond the obligation of the husband to the wife through her to their children. We are of opinion that this tax benefit should not be extended beyond valid debts payable directly to the wife, as limited by Neller's Estate, Stadtfeld's Estate and Mills Estate. Were we to include testator's testamentary gifts to his children under the guise of his contract with his wife to fulfill his or their common obligation for the support of their children, we would definitely open the door to a free ride for taxpayers. It is perfectly conceivable that if this extension be approved, the wife might properly single out other objects, including charities, her relatives or children by another marriage, all of whom might properly

claim the benefit of her contract. Clearly she would have no right to impose such obligations upon her husband. We do not think the legislature ever so intended or that the Supreme Court comprehended that its decision should be extended beyond valid benefits directly payable to the wife.

The taxpayers have not sustained the burden resting upon them initially to designate, separate and evaluate in money, substantially or otherwise, the many elements of consideration moving to testator at the time of the signing of the contract: McLure Appeal, 347 Pa. 481. This is not the Commonwealth's obligation. To the extent that the taxpayers have failed to do this, their appeal is defective. It is equally the duty of the hearing judge on appeal to weigh and to pass factual as well as legal judgment upon these elements and to state in dollars and cents the amounts allocable to each item insofar as they can be evaluated and to make specific findings of fact. Since we agree with the learned hearing judge that this is impossible, we cannot give a blanket blessing to the taxpayers and, therefore, this appeal must fail.

In Mills Estate, supra, Justice Allen M. Stearne specified many of the items missing from the record. We must do likewise. This testator, at the time of settlement with his wife, possessed approximately $700,000 in addition to his pension of approximately $8,900 a year. He had obtained a divorce in Japan. She had obtained a decree of separation and a support order for herself and her children in New York which order was implemented by a decree attaching his pension. She had also tied up effectually in equity proceedings in New Jersey most, if not all, of his other assets. In that case she alleged that he had misappropriated and misapplied approximately $250,000 of her funds and that he owed her a debt of $500,000

plus various amounts in different judgments. In his answer in those proceedings testator denied practically all of these allegations. The truth or falsity of these averment in whole or in part was never judicially established because the parties settled their differences and the hearing judge did not weigh their validity. Obviously, this settlement was not binding upon the Commonwealth: McLure's Appeal, supra. What measure of validity and value is the court to attach to these conflicting claims? What consideration moved to testator by reason of them? What consideration was involved in the other elements such as the obligations for support of the wife and of the sons? To allocate the full value of the legacies to the wife and through her to the sons is improper because, necessarily, she had a very limited, if any, right to pass any property through her to her sons without responsibility to the Commonwealth for taxes. Was this agreement merely a vehicle for passing on to the taxpayer's sons all or a part of the testator's testamentary estate irrespective of his obligation to his wife? The good faith of the transaction is not questioned. However, the matter of consideration and the money value thereof is vitally important because therein lies the answer to the question of taxability or nontaxability. These and many other missing elements render this record fatally defective.

To maintain, as do the taxpayers, that testator was tied up in a financial impasse by the New York and New Jersey litigation and was willing to do anything to extricate himself, does not necessarily mean that he was legally liable to his wife for everything that he possessed and, therefore, his whole fortune was completely involved in the settlement. The conclusion that he was permitted merely as a matter of grace to retain $400,000 of his assets for life, so long as he willed half of his estate to his sons, is fallacious. Ex-

actly what passed in money value to testator at that time?

The learned hearing judge cites the Pennsylvania doctrine of third-party beneficiaries in support of his conclusion that the legacies were not voluntary, but compulsory. That has nothing to do with their taxability. Parties cannot resort to contractual devices to escape taxes. The tax effect of their acts is always subject to scrutiny and review: Dellone Appeal, 347 Pa. 486; Kelly et al. v. Urban et ux., 136 Pa. Superior Ct. 20.

The learned hearing judge does not discuss either testator's or the wife's responsibilities to their sons. Were all of these responsibilities validly shifted from testator to his wife and reassumed by him under the contract? For instance, we seriously question whether all of the responsibility for the support of the children could be transferred validly by testator to his wife and thus become the subject matter of their contract (Commonwealth ex rel. Stack v. Stack, 141 Pa. Superior Ct. 147), and whether the amount provided for them under the deed of trust was not adequate to fulfill his responsibilities to them. What might be regarded as a fatal weakness on this score is the hearing judge's observation, "One of the elements of that settlement was an agreement to benefit the sons of the contesting parties. Possibly this was the only subject upon which the two litigants could agree, viz., their common love for their children." This weakness is aggravated by the point made by Deputy Attorney General Irving Kieff in his brief when he refers to the correspondence between counsel for the parties in the course of their negotiations for the settlement. He quotes from the letter dated March 4, 1937, to Edward D. Bolton, Esq., which is incorporated and made a part of the agreement of the parties: "You will note that Mr. Geary is willing to agree to make

a more generous bequest to his children than was contemplated in his earlier offer or in your letter as I understand it. Under the terms of the agreement to be made pursuant to this offer, Mr. Geary's two children, if they survive him, will receive one half of the entire net estate of which he shall die seized or possessed and the corpus of the trust fund, which will go to them under the trust deed, shall not be included in determining this amount."

For these reasons the exceptions are sustained and the appeal from the register is dismissed.

### DISSENTING OPINION

LEFEVER, J., March 25, 1955.—For the reasons set forth in my opinion in this case, I would dismiss the exceptions. Accordingly, I dissent.