**Jackson Estate**

*R. O. Brockway*, for appellant.

*R. S. Hemingway*, for Commonwealth.

KREISHER, P. J., July 18, 1955.—This is an appeal from the inheritance tax appraisement in the estate of Alex C. Jackson, late of the Borough of Berwick, Columbia County, deceased.

The precise matter here at issue is the value as of the date of death on February 17, 1953, of items 1 and 2 of decedent's real estate. Item one is in undivided one-half interest in the business building located on the northwest corner of Front and Market Streets and extending along Market Street to Second Street, commonly known as the Jackson Building or the Rea & Derick Drug Store Building. It is a three story brick building with store rooms on the ground floor and offices on the upper floors. Decedent's undivided one-half interest in this building was appraised for inheritance tax purposes by the State appraiser at $70,000.

Item 2 is the homestead residence of the deceased located on Second Street between Market and Mulberry Streets, which was appraised at $18,000, and is a full interest.

The method of appraisement of decedents' assets in assessing inheritance tax is set forth in Borie's Estate

13 D. & C. 355, cited with approval in Commonwealth v. Chamberlin Estate, 346 Pa. 472 and Haid Estate, 347 Pa. 159. It is pointed out in Borie's Estate that, at best, the fixing of the clear value of real estate of a decedent is a matter of much conjecture and diversified opinion, and no hard and fast rule can be laid down for any particular case.

The procedure on appeals in matters of this kind is prescribed in section 13 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2327.

The tax itself is not on the transfer of a specific property but an excise on the privilege of inheritance: Tack's Estate, 325 Pa. 545.

The Supreme Court of Pennsylvania has repeatedly declared that the procedure is analogous to that on appeals from the action of the county commissioners sitting as a board of revision. It is also clear that the value fixed by the State appraiser is prima facie correct, and its introduction into evidence makes out a prima facie case: Clabby's Estate, 308 Pa. 287. Thereafter, the burden shifts to the appellant to prove that the valuation as fixed by the State appraiser is excessive: Webster's Estate, 314 Pa. 233. The Commonwealth may rebut this proof by showing that the valuation is substantially correct or even too low. The appeal comes before the court on a hearing de novo (Clabby's Estate, supra) with power to reduce or increase the appraisement: McLure Appeal, 347 Pa. 481. Therefore, it is the duty of the court to determine not whether the appraiser erred in his valuation, but what is the fair and conscionable clear value of decedent's interest in the property at the time of his death: Smyser's Estate, 53 D. & C., 387, 394.

The act provides, 72 PS §2321, that the appraiser "shall make a fair, conscionable appraisement."

The cases indicate that while the sale value may

and should be considered, it is not the only guide to be followed in arriving at the fair and conscionable value. All evidence tending to legitimately affect the value is to be considered. Therefore, the location or neighborhood, the interest of deceased, the physical condition and construction, the service or uses for which it is adapted at the present and in the future, the annual income and expenses, the reproduction less depreciation, values and sale prices of other comparable property in the vicinity, if any, and any other matters reasonably affecting value.

In this regard appellant called four witnesses who qualified as real estate experts and who are well known and respected in their profession and their community and personally known to the court, who fixed the value of item 1 at between $40,000 and $50,000 and item 2 at between $8,500 and $10,000. One other witness for appellant, a contractor, told of the bad physical condition of the buildings and the extensive expensive repairs necessary to put them in good condition. On the other hand, four equally well known and respected men in their profession and community, and likewise personally known to the court, testified for the Commonwealth and fixed the valuation of item 1 from $77,500 to $85,000 and of item 2 from $19,000 to $20,000.

The main contention of appellant that item 1 is too high is because deceased owned only an undivided one-half interest, and that under these circumstances it is less than one half of the whole; that even though the capitalization of the revenue of the whole justified the fixed value, the value of an undivided one half is less than one half of the whole valuation.

We are inclined to agree with the witnesses for the Commonwealth who testified that this is not true in the case of a business building, because the personal element is lacking.

Commonwealth's witnesses testified that in fixing their valuations they took into consideration that decedent's interest was only an undivided one-half interest, but that it did not necessarily require them to reduce their valuation to less than one half of the whole for the undivided one-half interest. The distastefulness of an undivided one-half interest in a personal dwelling does not, in our opinion, prevail in a purely business proposition where a capitalization of the revenue justifies that valuation. This matter was discussed in Keller's Estate, 53 Dauph. 317, and though the court there reduced the valuation of the whole, it still fixed the value of an undivided one third as one third of the valuation of the whole. From a review of the testimony of the experts in this case and of the testimony relative to the income and expenses, the physical condition, the locality, the availability for continuous tenants at a high rent, which merely amounts to a division of the profits at the end of the year between various parties holding the undivided interests, in the court's opinion, justifies the testimony of the experts called by the Commonwealth.

Appellant also contends the values fixed by the Commonwealth's witnesses are too high because they allowed nothing for management or depreciation. Even if we concede this point and make these allowances in a grossly excessive sum, it would still not bring their figures down to the $70,000 figure of the appraiser, because the lowest figure given by any Commonwealth witness was $77,500, which is considerably higher than the appraised figure.

We believe that in regard to item 1 we must follow the ruling announced in Wolfe's Estate, 61 D. & C. 453. In that case, Wright, P. J., specially presiding in Dauphin County, who has since been elevated to the Superior Court bench, held that where all of the witnesses called for both sides are competent, respected and known well both in the community and to the court personally, and the one group of witnesses

for the Commonwealth fixed the value at a much higher figure than the appraised value, and the group of witnesses called for appellant fixed the value at a much smaller figure than the appraised value, the court will leave the appraisement stand and hold that appellant failed to meet the burden to sustain his appeal.

In regard to item 2, the facts are different. The homestead property is old-fashioned and in very bad disrepair. The location is poor for a dwelling and not especially conducive for a good business property. The main asset is the lot and the ground upon which the dwelling is erected, and the court is inclined to agree with appellant's experts that the appraised value of $18,000 is a bit high because of the vast expenditure necessary to make it revenue producing. However, the location is valuable and the dimensions of the lot warrant a value greater than testified to by appellant's witnesses but not as great as the appraised value, or that testified to by the Commonwealth witnesses. We are, therefore, inclined to split the difference and fix the valuation at $15,000.

To this end, we make the following

### Order

And now, to wit, July 18, 1955, it is ordered, adjudged and decreed that the value of an undivided one-half interest as of the date of death of item 1 of decedent's real estate, commonly known as the Jackson Building, was $70,000, and the appeal in regard thereto is dismissed.

It is further ordered, adjudged and decreed that the appraised value as of the date of death of item 2 of decedent's real estate, commonly known as the homestead property on Second Street, is reduced from $18,000 to $15,000.

The costs shall be paid by the estate of decedent.

An exception is noted and bill sealed on behalf of both parties.