## Gudebrod Estate

*William A. O'Donnell* and *O'Donnell, Weiss & Mattei*, for appellants.

· *Edward J. Ozorowski, John R. Rively* and *Quinlan & Ozorowski*, for respondent.

TAXIS, JR., P. J., March 6, 1961.—Edward D. Gudebrod, decedent, died March 26, 1958, and his will dated January 20, 1956, was duly probated April 10, 1958. Decedent at the time of his death owned 1,225 shares of common stock of Gudebrod Brothers Silk Co., Inc., which were valued at $100 each, or a total of $122,500 in the inventory and appraisement filed May 15, 1959. On August 14, 1959, the Register of Wills of Montgomery County appraised the 1,225 shares of stock for inheritance tax purposes at $200 each or a total of $245,000. Executors have appealed from the appraisement, and a hearing was held October 25, 1960.

Mr. Jerome Landau, a certified public accountant, testified on behalf of the executors. Mr. Landau is associated with David Joseph and Company, 17 East Forty Ninth Street, New York City, accountants for Gudebrod Brothers Silk Co., Inc. His testimony indicated that decedent owned 1,225 shares out of a total of 5,000 shares issued; that no recent sales of this stock have been recorded and that the book value per share at the end of the corporation's fiscal year on October 31, 1957, was $262, approximately $80 of which was attributable to plant equipment. Mr. Landau further testified that the book value of the shares was slightly higher than $262 at the date of death due to intervening earnings; that there were no unusual factors that would cause a substantial change; that the earnings per share for the fiscal period ending October 31, 1957, was $20.10; that the average earnings per share for the last five years prior to October 31, 1957, was $17.89; that decedent's salary at the time of death was at the rate of $25,000 per annum; that the dividends paid in the fiscal period ending October 31, 1957, were $7.50 per share; that the average dividend paid for the last five years prior to

October 31, 1957, was $7 per share and that Gudebrod Brothers Silk Co., Inc., is a closed corporation. Mr. Landau estimated the fair value of the stock to be no more than $150 per share. This estimate was based upon the average earning of $17.89 per share, a 10 percent earning factor and a 20 to 25 percent discount because of the minority interest involved, which, in the opinion of Mr. Landau, would be difficult to sell.

On cross-examination, Mr. Landau stated that the book value per share at the end of the corporation's fiscal year on October 31, 1958, was $269.65; that the earnings per share for the fiscal year ending October 31, 1958, was $22.

Mr. Vincent C. Marinaro, a tax examiner for the Department of Revenue for 19 years testified on behalf of the Commonwealth. Mr. Marinaro placed the clear value of the shares for transfer inheritance tax purposes at $200 per share. His testimony indicated that for the year ending October 31, 1957, the ratio of current assets to current liabilities was 3.3 to 1; that this ratio is exceptionally good in comparison with similar industries; that the ratio for the industry in general is 2.8 to 1, as reported for 1957 in Standard and Poor's; that the liquidity ration, 1.4 to 1, for the year ending October 31, 1957, likewise compared favorably with similar industries, .4 to 1; that the total wages and salaries amounted to 44.7 percent of the sales while the figure given for the industry in general is 32.8 percent; that the officer's salaries for the year ending October 31, 1957, together with benefits derived by officers under a profit sharing plan, were about $315,000; that the officers during the same period owned about 48 percent of the stock and that the company had an earned undistributed surplus accumulated on October 31, 1957, of $817,924.85.

The transfer inheritance tax is imposed by the

Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301, et seq., ". . . upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise . . ." Section 2 of the act, supra, specifies the rates and how the tax shall be imposed, viz.: upon the *clear value* of the property subject to the tax.

The determination of "clear value" is a factual question: McLure Appeal, 347 Pa. 481. Moffett Estate, 369 Pa. 159, 162, defines "clear value" of property as its estimated net worth. But "estimated net worth" is itself a general term and requires further delineation with reference to shares of a closely held corporation. In this respect, Moffett Estate, supra, makes the following statement:

"It is manifest that such net worth cannot, in *every* case, be measured by either market or book value. In some cases, however, in varying circumstances, either market or book value of property *may* be its net worth. A stock freely sold on the stock exchange might well have its worth established in such market. But where, as here, stock is closely held and represents but a minority interest, and is rarely sold, (and when sold perhaps under necessity or pressing circumstances) such sales do *not* fairly establish a true market value. Neither do book values, earnings or dividends *alone* establish such worth. On corporate books a valuable asset may be listed at a nominal figure. On liquidation or sale of corporate assets, such an asset may realize a large price, not adequately reflected in book value. While earnings and dividends play an important part in determining the worth of a stock, yet this *alone* is not controlling. This depends upon the financial policy of the corporate management as to what is charged to net earnings and what dividends and the amount thereof are paid to stockholders. All of these elements

must be taken into consideration in fixing 'clear value.' "

One must conclude from the foregoing statement that the clear value of shares of a closely held corporation cannot be determined by the application of a fixed formula. Rather, valuation in each case depends upon the circumstances. The circumstances must be examined to determine the relevancy of each particular circumstance and the probative weight to be attached thereto.

Authorities are helpful to the extent that they provide comparisons, suggest factors to be considered and weight to be attached. With this in mind, it is noted that besides the more obvious factors enumerated in the quotation from Moffett Estate, supra, the courts have considered the value of the property and business of the corporation as compared with its liabilities at the time in question, properly discounted according to salability (Wood's Estate, 29 Dist. R. 960); requirements to rehabilitate the plant and purchase new machinery if the company is to survive in a competitive market (McCarter Estate, 62 Montg. 280); quoted sales prices upon a stock exchange of listed stocks of like or comparable corporations with similar capitalization (Clemens' Estate, 26 Erie 70), and the expense of an investigation by a prospective buyer: Prescott's Estate, 15 Erie 252. See also Barbey's Estate, 34 Berks 155; Mohn Estate, 75 D. & C. 138; Biesecker Estate, 9 Somerset 1; Riblet's Estate, 18 Erie 75; Stirling's Estate, 15 Erie 108; Hunter, Pennsylvania Orphans' Court Commonplace Book, Inheritance Tax, §12; Gilbert, Pennsylvania Inheritance Taxation. Great weight has been ascribed to book value (McLure Appeal, supra) but, in light of the foregoing authorities, it cannot be denied that other circumstances must be considered.

Mr. Marinaro, the Commonwealth's witness, based his testimony upon the capital stock report as filed by this company with the Department of Revenue for the periods ending October 31, 1957, and October 31, 1958. The court admitted this testimony over objection. The Act of July 9, 1941, P. L. 305, as amended by the Act of March 6, 1956, P. L. 1218, sec. 2, 72 PS §731, provides that "Any information gained by any administrative department, board, or commission, as a result of any returns, investigations, hearings or verifications required or authorized under the statutes of the Commonwealth imposing taxes or bonus for State purposes, or providing for the collection of the same, shall be confidential except for official purposes, . . ."

The very same problem was faced by the court in Brown's Estate, 51 Berks 149, where it was decided that the admission of such testimony was for official purposes. See also Mohn Estate, 75 D. & C. 138; Carlson Estate, no. 160, May list, 1960, Erie County. Cf. Wood's Estate, 29 Dist. R. 960. The court may consider all of the evidence produced in this case.

The court does not believe that the clear value of decedent's stock is less than $150 per share. Book value, $262, October 31, 1957, does have some evidentiary value, and if there was an unrealistic inflation in that value, the estate should offer some explanation. In the present case, the only explanation on the record is that $80 of the book value was attributable to plant equipment, which, presumably because of its limited use, would not realize its full value in liquidation, and that earnings, $17.89 average for the last five years, did not warrant such a valuation. Appellants suggested a 10 percent earning factor, which would indicate a valuation of $178.90 per share, but further suggested a 20 to 25 percent discount because of the minority interest involved, which, in the opinion of Mr. Landau,

would be difficult to sell. Using a 20 percent discount, one would arrive at a value of $143.12.

The Commonwealth's evidence indicates the company is financially sound and compares favorably with similar industries. These factors, together with the advantage of earned undistributed surplus accumulated must be given some weight in the valuation. Although it is impossible to be exact, the court believes that the weight of these factors offsets the weight ascribed to the minority interest factor. Eliminating, then, the proposed 20 to 25 percent discount noted above, the court arrives at a valuation of $178.90. However, the fact that $178.90 represents a capitalization of earnings at 10 percent does not mean the court has not considered all of the relevant testimony.

The court believes that 20 to 25 percent discount in consideration of the minority interest is too great. Two examples can be cited of similar situations where a lesser discount was believed in order. In Bader v. United States, 172 F. Supp. 833, a discount of 10 percent was allowed on account of the lack of marketability. In the sale of a minority interest noted in Carlson Estate, supra, the interested parties by subsidiary agreement agreed that, upon sale of the company involved, the holder of a minority interest should receive only $207 per share. The sales price was $225 per share, thus providing for an eight percent discount. However, in the process of balancing the overstatement of weight properly attributed to lack of marketability, the court was influenced by the fact that the average dividend paid for the last five years prior to October 31, 1957, was only $7 per share, which, of course, is less than a four percent return on $178.90.

After carefully considering all of the elements relevant to a determination of clear value of decedent's stock, including the book value, capital stock, tax set-

tlement, earnings, dividends, financial position, position in the industry, corporate structure, the opinion evidence, as well as a review of the entire record, this court finds as a fact that the value of decedent's stock at the time of his death was $178.90 per share.

Accordingly, the court enters the following:

### Decree

And now, March 6, 1961, after hearing and after full and careful review of the entire record and consideration of the written briefs of counsel, it is ordered, adjudged and decreed that the appeal is sustained, and we now fix the value of decedent's common stock in the Gudebrod Brothers Silk Co., Inc., as of the date of death, for transfer inheritance tax purposes, at $178.90 per share. The appraisement and assignment for transfer inheritance tax is to be amended accordingly.