## Taylor Estate

*Franklin C. Hutchinson, Gerald A. Gleeson, Jr.,* and *Montgomery, McCracken, Walker & Rhoads,* for appellant.

*Edward J. Ozorowski,* Special Assistant Attorney General and *John H. Rively,* Deputy Attorney General, for Commonwealth.

TAXIS, JR., P. J., May 22, 1961.—This is an appeal from transfer inheritance tax appraisement made by the Commonwealth in regard to 2,486 shares of Taylor Fibre Company four percent cumulative preferred stock. The Commonwealth appraised the stock for inheritance tax purposes at $100 per share, whereas executor-appellant alleges the actual value of the stock

to be $80 per share. The Commonwealth introduced into evidence its appraisement and thus made out a prima facie case, casting upon appellant the burden of proving that the Commonwealth's valuation was unfair and unconscionable.

Raymond A. Lefkof, manager of the research and statistics department of Stroud and Company, Inc., an investment banking company of Philadelphia, testified on behalf of the estate that the preferred stock in question had a par value of $100, a dividend rate of four percent was cumulative, convertible and callable. The stock was convertible at the rate of 8.4 shares of common stock to each share of preferred when testator died January 13, 1959. It was callable at the company's option at $105 per share and had a liquidating value of $100 plus acccrued dividends.

On January 13, 1959, the common stock, which is traded in the over-the-counter market by Stroud and Company was quoted at 4½ bid and 4⅞ asked. At 4½, 8.4 shares would have had a value of $37.80, at 4⅞, 8.4 shares would have had a value of $40.95. None of the preferred stock had been converted at the time of decedent's death.

Mr. Lefkof considered the "money market" as it existed at decedent's death as the primary factor in determining clear value. This he defined as the market price for money, the annual interest rate or dividend rate which money commands. He testified that on January 13, 1959, to obtain a $4 income it would have been necessary to invest $85 in United States Government Bonds, $70 to $75 in medium-grade industrial bonds and $50 in low-grade bonds. Mr. Lefkof considers Taylor Fibre Company a medium-grade industrial company. In his opinion, the clear value of the stock in question was $62 per share on January 13, 1959.

Vincent C. Marinaro, a tax examiner and tax appraiser employed by the Pennsylvania Department of Revenue, testified on behalf of the Commonwealth. His testimony revealed the following facts from the Pennsylvania franchise and corporate income tax returns of Taylor Fibre Company for the year 1958: (1) The net actual worth of the assets as reported was $5,231,452; (2) the company had no funded or long term debt; (3) the ration of current assets to current liabilities was 4.3 to 1; (4) the ration of fixed assets to current assets was about 2 to 1; (5) net income after taxes for 1958 was $248,953; (6) the average net income after taxes for the five years preceding 1959 was $327,285; (7) the stockholders received $123,881 as dividends in 1958; (8) the average annual dividends paid to stockholders for the five years preceding 1959 was $144,867; (9) the company had an earned surplus of $1,372,275. In the opinion of Mr. Marinaro, the clear value of the stock in question was $100 per share on January 13 1959.

The transfer inheritance tax is imposed by the Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301, et seq., upon ". . . the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise . . ." Section 2 of the act, supra, specifies the rates and how the tax shall be imposed, viz.: upon the *clear value* of the property subject to the tax.

The determination of "clear value" is a factual question: McLure Appeal, 347 Pa. 481. Moffett Estate, 369 Pa. 159, defines "clear value" of property as its estimated net worth. There is no fixed formula to determine clear value and the court must consider each particular circumstance, determine its relevancy and the probative weight to be attached: Moffet Estate, 369 Pa. 159.

Mr. Marinaro, the Commonwealth's witness, based much of his testimony upon the capital stock report as filed by this company with the Department of Revenue. The court admitted this testimony over objection. The Act of July 9, 1941, P. L. 305, as amended by the Act of March 6, 1956, P. L. 1218, sec. 2, 72 PS §731, provides that "Any information gained by any administrative department, board, or commission, as the result of any returns, investigations, hearings or verifications required or authorized under the statutes of the Commonwealth imposing taxes or bonus for State purposes, or providing for the collection of the same, shall be confidential except for official purposes."

The introduction of such information, in these circumstances, was "for official purposes," and admissible. See Brown Estate, 51 Berks 149; Mohn Estate, 75 D. & C. 138.

Insofar as the remainder of Mr. Marinaro's testimony is concerned, that is, testimony not relating to information shown on the capital stock tax returns, the question is more difficult but less important. Except for Mr. Marinaro's personal opinion concerning the clear value of the stock, there is very little pertinent testimony given by this witness and the question is almost academic. However, the court finds that the witness is qualified as an expert witness. On pages 86 to 88 of the notes of testimony, Mr. Marinaro relates satisfactorily the meaning of clear value as it has been defined by the courts. The reason for Mr. Marinaro's disqualification in Mercer Estate, 52 Berks 48, does not appear in the opinion of the court, and this court can disqualify a witness only on the basis of the evidence before it. Therefore, all of the testimony of Mr. Marinaro is admissible in this proceeding. This court is of the opinion that Mr. Marin-

aro overstated the importance of par value in fixing clear value but this does not disqualify him but rather diminishes the weight attached to his opinion.

Even without the testimony of Mr. Marinaro, the Commonwealth made out a prima facie case when it introduced into the record the inheritance tax appraisement: Clabby's Estate, 308 Pa. 287. The burden of proving the appraisal for inheritance tax purposes is unfair or unconscionable is upon the estate: Clabby's Estate supra. Where the evidence on an appeal is conflicting, the appraisement will not be disturbed: Wolfe's Estate, 61 D. & C. 453; Smith's Estate (No. 1), 261 Pa. 51.

The factors emphasized by the estate are the convertible feature whereby each share of preferred stock was convertible into common stock selling at $37.80 to $40.95, fluctuations in the earnings of the company over the last five years preceding the date of death and the comparative money market. The latter factor was most emphasized. The estate argued that at the time of death one would have had to invest only $70 to $75 in a similar security to obtain the same $4 income.

The court is not too impressed by the first two factors emphasized. Although the value of the common stock has some bearing on the value of the preferred because of the convertible feature, it is more the convertible feature in itself and the potential advantage that convertible feature may secure than the comparative values of common and preferred stock at a given time that affects the value of the preferred stock. The fluctuations in earnings of the company over the last five years preceding the date of death are not a favorable circumstance, but the Pennsylvania franchise and corporate income tax returns of Taylor Fibre Company for the year 1958 show

that the financial position of Taylor Fibre Company is secure.

The court is impressed by the argument concerning the comparative money market. The same argument was presented in Mercer Estate, 52 Berks 48, affirmed, 402 Pa. 495. The court reasoned that no one factor is conclusive particularly in the case of a. stock which is not freely sold on the market but which is closely held and rarely, if ever, sold. The court took into consideration all of the factors showing the sound financial position of the corporation and found that the clear value of the stock in question was its par value. The estate contends that the Mercer case is distinguishable in that the executors there refused to accept a bid of $65 per share for the stock. Certainly, the court took this factor into consideration, and it is a factor which distinguishes the Mercer case from the present one. However, there are other distinguishing features which indicate that this court should accept the Commonwealth's appraisement in the present case. The preferred stock in the Mercer case was second preferred noncumulative. In addition, the dividend rate was only three percent. The court disagrees with the estate's contention that the trial court in Mercer indicated it would have accepted a figure less than par as the clear value, except for the fact that appellants had rejected a bid of $65. This view seems contrary to the court's statement that "considering the entire financial structure of the C. K. Whitner Company and all of the elements aforementioned, we conclude that the clear value of the second preferred 3% non-cumulative stock of the C. K. Whitner Company at the time of the death of the decedent was $100 per share": Mercer Estate, 52 Berks at page 56.

The court believes that in light of the sound financial position of Taylor Fibre Company, a company

with assets having a net actual worth of $5,231,452, no funded or long term debt and an earned surplus of $1,372,275 and with a history of total earnings sufficient to pay dividends on all issues of stock, the estate has not met the burden of proving that the Commonwealth's appraisement of the stock in question does not truly reflect the clear value thereof or that the appraisement is too high, unjust, unreasonable, unfair, unequitable or confiscatory.

And now, May 22, 1961, the appeal from the assessment for transfer inheritance tax purposes is dismissed.